**Stanley B. LIGHTFOOT, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 9058 and 9716.**

District of Columbia Court of Appeals.

Argued July 13, 1976.
Decided Oct. 5, 1977.

---

3. *See, e. g., Fox v. Superior Court for County of Maricopa*, 21 Ariz.App. 284, 518 P.2d 1001 (1974).

Alexander L. Benton, Washington, D. C., appointed by this court, for appellant.

Stephen R. Spivack, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, William D. Pease, and Edward D. Ross, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and MACK, Associate Judges.

MACK, Associate Judge:

Appellant Lightfoot was charged in a twenty-count indictment with six counts of armed robbery (D.C.Code 1973, §§ 22–2901 and –3202), six counts of robbery (*id.* § 22–2901), six counts of assault with a dangerous weapon (*id.* § 22–502), one count of carrying a pistol without a license (*id.* § 22–3204), and one count of unlawful possession of a sawed-off shotgun (*id.* § 22–3214(a)). At the close of the government's case, a motion for judgment of acquittal was granted as to the charge of unlawful possession of a sawed-off shotgun. The jury found Lightfoot guilty of carrying a pistol without a license, but was unable to reach a verdict on the remaining eighteen counts. Appellant was sentenced as a repeat offender to a term of one to three years of imprisonment. A timely notice of appeal was filed. (No. 9058).

After a second trial, the jury returned a verdict of guilty of the six counts of robbery and not guilty of armed robbery and assault with a dangerous weapon.

A motion for a new trial was denied, and appellant was sentenced to five to fifteen years on each count, concurrent with each other and the sentence previously imposed. A timely notice of appeal was filed (No. 9716) and the two appeals were consolidated.

In addition to other claims of error which we have examined and found to be without merit, appellant renews on appeal an argument raised for the first time in his unsuccessful motion for a new trial: the claim is that the trial court erred in submitting the robbery counts to the jury as lesser-included offenses of armed robberies since there was no factual dispute that the robberies were committed with dangerous weapons. In other words, appellant, if guilty of robbery at all, is guilty of *armed* robbery. The trial court agreed with the argument but denied the motion since trial counsel had not objected before the jury retired to deliberate.

We must decide whether it was error to submit the robbery counts to the jury and, if so, if it was plain error, no timely objection having been made.

I.

*The Evidence*

*The Prosecution Case*

The prosecution introduced evidence (at both trials) which can be summarized as follows: Gregory Hawkins invited some

friends to his apartment for a Friday evening poker game. At about 8:30 p. m., there was a knock at the door; after looking through the peephole and seeing someone whom he recognized by sight, one of the guests opened the door. Two men entered the apartment. One brandished a black automatic pistol and announced that it was a "stickup." The taller of the two wore a burgundy or cranberry ski mask and carried a sawed-off shotgun. All six victims were ordered to the floor and tied up. Two more men subsequently arrived to assist in the robbery. In the course of five or ten minutes the robbers went through closets and drawers and also took various items from each victim. From Hawkins the robbers took approximately $270, a watch, a camera, and most of his clothing; from Marion King, a diamond ring, a watch and more than $400; from Clark Freeland, $70; from John Neal, $200, a ring, and his red leather jacket; from Freddy Wilson, a Timex watch, money, and a black leather coat; and from Alfred Holmes, about $80 in change, including two or three silver dollars and half-dollars, and several rolls of dimes in green and white bank wrappers.

After the robbers left the apartment, Hawkins and King untied themselves and ran to a window from which they could see four men carrying armsful of clothes; when Hawkins yelled at them, the four men began running. They were then pursued by three of the victims.

Meanwhile, two detectives saw several men carrying armsful of clothing and became suspicious. After circling the area in their car, they observed appellant running toward them; when the police cruiser stopped, appellant made a quick about-face and begn running in the opposite direction. One of the detectives gave chase and yelled, "Stop or I'll shoot." Appellant stopped, throwing an object with each hand. Subsequently recovered from the ground nearby were a gun (identified at trial by four of the victims as similar in size and color to that used in the robbery), and Mr. Hawkins' camera.

Appellant was wearing a burgundy and gold ski cap and various other items of clothing which were identified by some of the victims as matching that of one of the robbers. After the arrest, a thorough search of appellant's person uncovered a Timex watch, identified by Freddy Wilson, and a great deal of change, including several rolls of dimes in green and white bank wrappers which, Alfred Holmes testified, were similar to his dime wrappers.

### The Defense Case

Appellant took the stand in his own defense and testified essentially as follows: On the evening of the robbery a Frederick Waller who, like appellant, was a coin collector and friend, dropped by appellant's home and gave him some rolls of dimes to begin a dime collection. He put the dimes in a jacket which he then put on to go for a walk. At one point he heard three gun shots and saw four people, who dispersed and ran, dropping objects along the way. Appellant stumbled upon, and picked up, a watch and camera. After walking a little farther, he kicked an object which turned out to be a gun. He had just picked up the gun when he heard the order, "Halt or I'll shoot." He threw the gun and camera to the ground. Appellant testified that the ski cap was not his, but had been placed on his head by a police officer.

Frederick Waller also testified for the defense, and stated that he had given appellant four or five rolls of dimes and two or three silver dollars because he owed appellant some money.

### II.

As we have noted, the indictment charged Lightfoot in separate counts with both armed robbery and robbery. The robbery counts were submitted to the jury in the same manner as an uncharged lesser-included offense; i. e., the jury was instructed to consider robbery only if they found him not guilty of armed robbery.

The threshold question is whether appellant had the right to have withheld from the jury the lesser-included offense of rob-

bery, although charged as a separate count of the indictment. Resolution of that question turns on whether the evidence was such that the jury could rationally find appellant guilty of the lesser offense but innocent of the greater; *i.e.,* was there a disputed factual element. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). The question here then becomes whether there was a reasonable basis on which the jury could find appellant guilty of the robberies yet entertain a reasonable doubt as to whether the robbers were armed.

▆ Here there was no "sharply conflicting testimony" on this point, nor was a conclusion that the robbers were unarmed "fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *United States v. Sinclair,* 144 U.S.App.D.C. 13, 14–15, 444 F.2d 888, 889–90 (1971). *See Sansone v. United States, supra; Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *Pendergrast v. United States,* D.C.App., 332 A.2d 919, 924 (1975). The testimony of the victims that the first two intruders were armed was unequivocal and uncontradicted. Appellant's defense, being totally exculpatory, did not place this fact in dispute. On this set of circumstances, the instruction on the lesser-included offense was (by *Sansone* standards) "improper." That is to say, had the indictment charged only armed robbery, and had the defense requested an instruction on the lesser-included offense of robbery, we have no doubt that the trial court would properly have refused the request on the ground that the instruction was "objectionable as based on speculation without foundation in the evidence," *Belton v. United States,* 127 U.S.App.D.C. 201, 207, 382 F.2d 150, 165 (1967), and "merely a device for defendant to invoke the mercy-dispensing prerogative of the jury." *United States v. Sinclair, supra,* 144 U.S.App.D.C. at 15, 444 F.2d at 890.

▆ The question then arises whether a different result should obtain because the lesser offense is included in the indictment. The Second Circuit has considered the question of whether the government has an absolute right to have the jury charged in these circumstances and has concluded that the government "cannot avoid the strictures of the *Sansone* doctrine by the simple expedient of asking the grand jury to include the lesser offense as a separate count in the indictment." *United States v. Harary,* 457 F.2d 471, 479 (2d Cir. 1972). "In general the chargeability of lesser included offenses rests on a principle of mutuality, that if proper, a charge may be demanded by either the prosecution or defense." *Fuller v. United States,* 132 U.S.App.D.C. 264, 295, 407 F.2d 1199, 1230 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). It follows as a corollary, we believe, that a judge should not submit to the jury a lesser included offense over the objection of either the prosecution or the defense where the requisite disputed factual element is lacking. To do so "serves only to encourage the jury to exceed its historical function of factfinding" and exercise its "mercy-dispensing power" by convicting of the lesser rather than the greater charge. *United States v. Harary, supra* at 478. We might assume that defendants will not be adverse to the opportunity for such a compromise or "merciful verdict." Yet conceivably there are cases (particularly cases with hard issues as to basic guilt) where a defendant may desire to eliminate the chance that the jury might compromise by convicting him of "something" instead of outright acquitting. In such a case a defendant should be able to take his chances on an "all-or-nothing" verdict. We agree, therefore, with the *Harary* court that "a defendant has the right to have a lesser-included offense, although charged as a separate count in the indictment, withheld from the jury's consideration when the jury rationally cannot return a verdict of not guilty of the greater offense but guilty of

the lesser offense." *United States v. Harary, supra* at 472. However, the right by its very nature is one that must be exercised.

█ We conclude, therefore, that while the trial court improperly submitted the robbery counts to the jury, appellant is not entitled to reversal. Where a defendant chooses to take the risk of an all-or-nothing verdict, we think it is incumbent on him to make a timely motion or objection at the trial.* Finding no error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial," *Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976), the judgments of conviction are

*Affirmed.*

---

* We recognize that the circuit court in *Green v. United States*, 95 U.S.App.D.C. 45, 218 F.2d 856 (1955), found plain error in a similar circumstance, but the case is distinguishable in that there the lesser offense had not been *charged* in the indictment and this lesser offense, by Code definition when coupled with factors there present, constituted the greater offense. [The unpurposed killing of another in committing arson was first degree murder]. We note that upon retrial Green was convicted of the greater offense and the Supreme Court reversed on double jeopardy grounds. 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. By contrast, Lightfoot could be retried for robbery, but not armed robbery, having been found not guilty of the greater offense.