Michael PERRY, Appellant,

and

Derwin B. Straite, Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–194, 88–424 and 88–510.

District of Columbia Court of Appeals.

Argued Nov. 8, 1989.

Decided March 14, 1990.

Greta C. Van Susteren, Washington, D.C., appointed by this court, for appellant Perry.

Steven R. Kiersh, Washington, D.C., appointed by this court, for appellant Straite.

Ann K.H. Simon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and William R. Martin, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before BELSON and STEADMAN, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

A jury found both appellants guilty of burglarizing and then attempting to steal clothing from a Georgetown store in the early morning hours. The jurors also convicted appellant Perry of shooting to death a member of the Metropolitan Police Department who responded to the store's alarm system which the break-in had trig-

gered. We affirm but remand for further proceedings as to the sentencing.[1]

Perry was caught a few blocks away from the store a few minutes after he had committed this burglary and murder. His capture was due (1) to the "general alert" to all law enforcement personnel transmitted over radio by the police who arrived on the scene in response to the fatally-wounded officer's call for back-up and discovered him dying with five gunshot wounds, his revolver missing, and a trail of blood leading out of the store onto Wisconsin Avenue, south along its sidewalk to P Street, and then around the corner and east along P Street; (2) to citizens who spotted a man (who turned out to be Perry) running in an eastward direction in the 3000 block of P Street and holding his hand as if it were injured, and so reported their observation and description of this man to police; and, (3) to the keen reaction of several law enforcement officers on patrol who, having heard over their radio the report of the shooting and the description of the injured man leaving a trail of blood and fleeing east on P Street, anticipated the perpetrator's flight would take him across the Q Street bridge. These officers proceeded to Q Street and saw a man matching the description of the suspect approaching this bridge. When he saw them, they noted him turn away. Aware that there had been a shooting and alert to the possibility that he might be armed, they confronted him at gunpoint. The man, Perry, shouted that he was hurt and needed help because he had a bullet in his hand. These officers then asked him where the gun was, to which he replied, "I ain't got no gun. He shot me."

These officers placed Perry on the ground while other police arrived. Thereafter, he took the officers to the place where he had thrown away the murder weapon, *viz.*, the officer's service revolver, during his flight and then made a full

---

1. As a result of this shooting, Perry was convicted of and sentenced for the crimes of premeditated murder, felony murder (burglary), armed assault on a police officer, and carrying a pistol without a license. We note that our decision in *Byrd v. United States*, 510 A.2d 1035 (D.C.1986)

(en banc) requires resentencing by the trial court in the instant case on the convictions for both premeditated murder and felony murder since two murder convictions cannot arise out of a single killing.

confession in which he implicated appellant Straite. Armed with this confession, the police obtained an arrest warrant for Straite, went to his home and there arrested him. Several hours later, after being fully apprised of his rights, he also confessed and implicated Perry.

Each appellant prior to trial moved to suppress his confession: Perry argued that both his initial seizure and his subsequent arrest were unlawful in violation of the Fourth Amendment and hence his post-arrest confession and the murder weapon should have been suppressed. Straite argued that his post-arrest confession was unlawful because it had been unknowingly and involuntarily given and hence should have been suppressed. The trial court conducted an extensive hearing on each motion and denied the motions. We are not persuaded that the trial court's denial of these motions constituted reversible error.

██ In the case of Perry, when the law enforcement officers stopped him at gunpoint shortly after the commission of the crime and a short distance from the crime's occurrence, they had information that (1) a police officer had been shot and that the perpetrator might be carrying the officer's gun, (2) a trail of blood led out of the place of the shooting eastward on P Street, and (3) a person, described by race, gender, height and clothing was running eastward on P Street, "cradling his hand," as if he had been injured. These officers then saw a man proceeding eastward on Q Street who matched the description of the fleeing suspect and who turned away from them when he saw them. As they approached him he called out that he had a bullet in his hand and needed help. Under these particular circumstances the officers clearly were not obliged to shrug their shoulders and allow the man before them to pass by, but had articulable facts and circumstances to justify their forcible stop of this man, appellant Perry. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Brown v. United States*, 546 A.2d 390, 393 (D.C.1988).

██ When these officers then asked Perry, "where's the gun?" He replied, "I ain't

got no gun. He shot me." Under these additional circumstances, the trial court correctly ruled that the law enforcement officers had probable cause to arrest Perry for the shooting of the deceased policeman. *See In re E.G.,* 482 A.2d 1243, 1246-47 (D.C.1984).

██ As to Straite, the trial court found after a hearing that his confession was both knowing and voluntary, and we must affirm such finding "unless it was without substantial support in the evidence." *Calaway v. United States*, 408 A.2d 1220, 1225 (D.C.1979); *see also Bliss v. United States*, 445 A.2d 625, 631 (D.C.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983).

The evidence supporting the ruling was that the police arrested Straite in his home pursuant to a warrant and read him his *Miranda* rights there. He again was advised of his rights at the homicide office and then presented with a standard police form, which set forth his rights in writing and accorded him the opportunity to make a waiver of these rights. He signed this form, and expressly waived his rights. After being questioned, and confronted with Perry's confession, Straite confessed and was videotaped while giving his confession. The trial court viewed the videotape, noted Straite's familiarity with the criminal justice system, and, had before it evidence that on a prior occasion he had in fact invoked his right to remain silent. The trial court also reviewed the police treatment of Straite while being questioned in this case. We are not persuaded that the trial court was without substantial evidence to support its conclusion that Straite, with full knowledge of his rights, voluntarily confessed.

██ Appellant Straite contends that the trial court committed reversible error by refusing during the trial to sever his case from that of appellant Perry. The matter of severance of codefendants in the midst of a trial is left to the broad discretion of the trial court which has the best vantage point from which to determine whether or not under the particular circumstances the

movant would be denied a fair trial unless there was severance. *Carpenter v. United States*, 430 A.2d 496, 502 (D.C.) (en banc), *cert. denied*, 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). We will reverse only upon a showing of "clear abuse" by the trial court in the exercise of its broad discretion. *Christian v. United States*, 394 A.2d 1, 20 (D.C.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). We discern no such abuse of discretion here.

■ Straite argues that the evidence of *his* guilt of burglary and attempted theft was *de minimis* when compared to the evidence of murder, burglary, and theft attempt presented against his codefendant, Perry, and that such evidentiary disparity necessitated severance. The trial court concluded otherwise, characterizing the evidence presented against Straite to be as "overwhelming" as was the evidence against Perry. We agree. We note that (1) the owner of the store testified unequivocally that the store had been broken into and clothing in its inventory removed from shelves and packed for transport, (2) the alarm company representative testified that the burglar alarm had been triggered, and (3) appellant Straite admitted that he had participated in the breaking and entry and the attempted theft. Clearly, the evidence against Strait was not *de minimis* and so his contention that severance was required because of so-called evidentiary discrepancy must fail. *Hawthorne v. United States*, 504 A.2d 580, 585 (D.C.), *cert. denied*, 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986).

Next, Straite argues that by reason of his joint trial with Perry he was precluded from calling Perry as a witness to testify that he (Straite) was not involved in the burglary and attempted theft. However, at no time did Straite proffer to the court that were he to call Perry to the stand, Perry would so testify. Indeed, Straite's counsel conceded that he had never spoken with Perry. He could offer only hearsay testimony of what a third person said that Perry had said, which the trial court properly ruled inadmissible. In *Jackson v. United States*, 329 A.2d 782, 787 (D.C. 1974), *cert. denied*, 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975), this court made clear that a codefendant who urges that a refusal to sever in the midst of trial constitutes reversible error must show that "a joint trial did in fact result in [the movant] being denied a fair trial and due process of law." No such showing was made upon this record.

Finally, Straite argues that severance was required because although Perry's confession was admitted into evidence in redacted form (eliminating any reference to Straite by name) and under a limiting instruction to the jury, nevertheless there was "a substantial risk" that the jury considered Perry's confession in deliberating upon Straite's guilt. *See Foster v. United States*, 548 A.2d 1370, 1378 (D.C.1988). The issue is "the degree of inference the jury must make to connect the defendant [Straite] to the statement [by Perry]." *Morriss v. United States*, 554 A.2d 784, 787 (D.C.1989) (quoting *Foster, supra*, 548 A.2d at 1378).

We note in the record that counsel for Straite alerted the jury in his opening statement that the "only evidence" the police had to support their arrest of Straite was that "some person had mentioned the name of Derwin Straite." The court then expressed concern that counsel not "undo" the effort made by redacting Perry's confession so as to avoid Perry in any way implicating Straite in the view of the jury. Nevertheless, Straite's counsel repeated that his client was seized "based only on the fact that one person mentioned his name." Thereafter, during the trial, Straite's counsel brought out testimony that Perry had given information to the police "naming" Straite and that this "was the only information" the police had in obtaining an arrest warrant for Straite. Finally, Straite's counsel reminded the jury in closing that Perry after arrest had named Straite to the police at the station house. Thus, Straite's defense, not Perry's redacted confession, primarily created a risk that the jury might infer that Straite was connected to Perry as his companion in crime. Under these circumstances, the

court's refusal to sever Straite's case from that of Perry on the ground asserted did not constitute reversible error.

 Appellant Perry contends that the trial court committed reversible error by allowing a prosecution witness to testify over defense objection at trial concerning a remark made to him by appellant Perry three or four months before the shooting. Appellant had commented to the witness—while the two of them were observing police arrest persons suspected of drug-dealing—that were the police ever to "handle" him that way he would shoot them. The trial judge considered the defense objection and ruled that the evidence had probative value on the issue of Perry's intent when he fired five pistol shots into the police officer who had confronted him in the store.

The theory of Perry's defense at trial was that he had shot the officer in self-defense because the officer had handled him so roughly that he feared for his own life. Clearly, the testimony concerning Perry's comment that he would shoot any police officer who handled him roughly was relevant. In our view, it did not amount to such *undue* prejudice to Perry so as now to require reversal. First, the defense cross-examination of the witness considerably weakened the impact of his testimony because the witness qualified the assertion he had made on direct examination. In any event, another witness testified as to what Perry had told him shortly after the shooting: that Perry shot the officer out of anger because the officer had shot him in the hand. Thus, the testimony concerning the statement Perry made three months *before* the shooting was merely cumulative to the far more damning statement he made shortly *after* the shooting.

 Appellant Perry argues that evidence presented concerning his premeditation and deliberation in fatally shooting the officer was insufficient to support the conviction of first-degree murder and hence the trial court should have granted his motion for judgment of acquittal on this particular charge. *See generally Hall v. United States*, 454 A.2d 314, 317 (D.C. 1982). The trial court, in denying appellant's motion, properly took into account the considerable amount of forensic evidence presented at trial to prove what happened when the police officer confronted Perry in the midst of the burglary of the store. The use of circumstantial evidence to prove premeditation and deliberation in a homicide case is entirely permissible. *Frendak v. United States*, 408 A.2d 364, 371 (D.C.1979).

This evidence was sufficient to enable reasonable jurors to reasonably infer that Perry wrestled the officer's gun out of his hand, disabled him with several shots, and, thereafter, in anger at having been struck by a bullet to the hand during the struggle, deliberately shot and killed the officer as he lay on the floor of the store, despite the officer's warning appellant, "Don't do it." The fact that the shooting by Perry occurred immediately upon his confrontation with the officer does not preclude the jury finding premeditation and deliberation. There was sufficient time between Perry's anger and his action to constitute deliberation and premeditation. *Watson v. United States*, 501 A.2d 791, 794–95 (D.C.1985); *Frendak, supra*, 408 A.2d at 371. We are not persuaded the trial court's refusal to order Perry acquitted of premeditated and deliberate murder during the burglary constituted reversible error.[2]

 Appellant Perry also urges that a gratuitous remark by a prosecution witness during direct examination at trial, *viz.*, that he had visited appellant Perry at the D.C. Jail prior to trial, so prejudiced Perry that he was denied his constitutional right to due process of law and a mistrial should have been declared. The remark was not

---

2. Appellant Perry urges, and the government agrees, that the consecutive sentences imposed by the trial court for the convictions of felony murder (burglary) and burglary raise *double* jeopardy concerns. The trial court should consider the appropriate modification of this part of its sentence, *Garris v. United States*, 491 A.2d 511 (D.C.1985), upon remand of this case for the purpose of resentencing on the convictions of both premeditated murder and felony murder noted in note 1 of this opinion.

provoked by the form of the prosecutor's question, was cut off by immediate objection, and amounted to two words in a lengthy trial that consumed *in toto* more than two thousand pages of transcript and took up almost twenty days of proceedings both in hearings and at trial. The trial judge, out of the presence of the jury, listened to a playback on the audiotape of the witness' improvident answer. The court, after hearing the replay of the incident, concluded that the witness didn't "get out the word 'jail'" because of the promptly-spoken objection. Accordingly, the trial court denied the defense motion for a mistrial. We are not persuaded this incident requires a reversal of the trial court and the grant of a new trial to appellant Perry.

In sum, there is ample evidence in the record to support the jury's findings: that appellant Perry burglarized and attempted to steal from a store, and then deliberately shot to death the police officer who responded to the break-in and attempted theft, and that appellant Straite participated in the burglary and the failed theft.[3] The record also reflects that the trial court conducted the lengthy and vigorously-contested proceedings with thoroughness and fairness. We affirm the convictions but remand the case of Perry to the trial court for re-imposition of the sentences with respect to (a) the premeditated murder and felony murder convictions and (b) the felony murder (burglary) and burglary convictions, all as discussed in this opinion.

*So ordered.*

---

3. The trial court, upon appropriate motion by appellant Straite, entered a judgment of acquit- tal on the murder charges the prosecution had also brought against him.