Marco PRICE, Appellant,

v.

UNITED STATES, Appellee.

No. 89–324.

District of Columbia Court of Appeals.

Submitted Oct. 11, 1990.

Decided Jan. 28, 1992.

Steven R. Kiersh, Washington, D.C., was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., John R. Fisher, Charles W. Cobb, and Sherri L. Evans, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and WAGNER, Associate Judges, and PRYOR, Senior Judge.

WAGNER, Associate Judge.

Following a jury trial, appellant was convicted of carrying a pistol without a license (D.C.Code § 22–3204 (1989)) and second-degree murder while armed (D.C.Code §§ 22–2403, –3202) (1989)) in connection with the death of one Jerry Pickens.[1] He was also convicted of assault in violation of D.C.Code § 22–504 (1989) in connection with an assault on one Leroy Johnson that same evening.[2] Appellant was tried with a co-defendant, Reginald King, who was charged with and convicted of assault with a dangerous weapon (on Jerry Pickens) and carrying a pistol without a license. Appellant challenges his convictions on the grounds that the trial court erred in refusing to instruct the jury on the lesser included offense of manslaughter and in denying his motion to sever his case from that of his co-defendant. Finding appellant was entitled to neither the requested instruction nor severance, we affirm.

## I.

The government's evidence disclosed that on May 28, 1989, Leroy Johnson and decedent, Jerry Pickens, drove into the area of 13th Place and Congress Street, Southeast, in the District to purchase drugs. While Pickens remained in the driver's seat, Johnson got out of the car to attempt to locate someone he knew and make the purchase. Having failed to find his friend, Johnson started back to the car, but several men offered to sell him drugs. Declining the offers, Johnson continued back toward the car, but appellant grabbed him from behind and pulled him to the ground. Several young men began beating Johnson, someone with a stick and others with punches

and kicks. Someone said "Go in his pockets," but Johnson could not feel anyone doing so. Pickens got out of the car with a baseball bat in an effort to rescue Johnson. Appellant's co-defendant, Reginald King, fired a shot in the air, and the group dispersed. Appellant took the gun from King and chased Pickens back to his car where Pickens got in, closed the door and started the car. However, appellant ran to the driver's side of the car and fired at Pickens several times, striking him twice in the abdomen and once in his left forearm. As Pickens tried to drive away, he struck a parked car and an apartment building before the car stopped at the corner of Congress Place and Savannah Street, S.E. Pickens died as a result of the gunshot wounds inflicted by appellant. Four of the government's witnesses who knew appellant identified him as the person who fired several times into decedent's car window that night.

Appellant's defense was that one Derrick Wilson, who is known as Bo Bo, shot the decedent, and he presented two witnesses who so testified.[3] One of the witnesses, Steven Turner, testified that from his window one story up, he saw Pickens get out of the car, remove a baseball bat from the trunk and say that he was not "going to let you all punks take my money like that." According to Turner, Pickens approached appellant while swinging a baseball bat, and saying that he would not allow anyone to take his money. Turner recounted that Pickens chased appellant through a parking lot. Thereafter, co-defendant King, who had been a part of a group arguing in the street, fired a gun into the air. After King fired the gun, decedent hesitated for a second before continuing toward appellant. Appellant then grabbed the gun from King and also shot into the air. According to the witness, Bo Bo ran across the street

---

1. Appellant was originally charged by indictment with first-degree felony murder while armed and first-degree premeditated murder while armed (D.C.Code §§ 22–2401, –3202) (1989)). He was found not guilty of first-degree premeditated murder, but convicted of the lesser included offense of second-degree murder while armed.

2. Appellant was indicted and tried for assault with intent to commit robbery (D.C.Code § 22–501 (1989)). The jury found him not guilty of that offense, but convicted him of the lesser included offense of assault.

3. Appellant did not take the stand.

and urged appellant to shoot the decedent. Bo Bo also said he was going to kill the man. Bo Bo grabbed the gun from appellant and chased Pickens back to his car where he shot him.

Another witness, Terry Thomas, who watched from the same window as Mr. Turner, testified that she heard a lot of "cussing" outside and heard appellant say, "[M]an, not me, I wasn't he, I just came up." This witness said she observed appellant backing away from the man who was swinging the bat at appellant and the co-defendant before appellant fired a gun in the air. Although Thomas testified that she went to the window before Turner, she said she did not see Pickens get the bat from the car and did not know where he got it. She also testified that it was Bo Bo who grabbed the gun from appellant and threatened to kill the decedent. Thomas further testified that she observed the victim as he started running away, but she stopped looking before the fatal shots were fired.

One witness for the government testified that the time between the firing of the first shot and the final rounds ranged from 1.5 to 2 seconds, while another said the shots "could have been close" or "right apart from one another." Appellant argued to the trial court that the interval was so brief as to negate the element of malice required for second-degree murder and show that the offense was committed in a sudden heat of passion caused by adequate provocation. The trial court disagreed and denied appellant's request for an instruction on manslaughter.

## II.

■ Appellant argues that the trial court erred in refusing to instruct the jury on the lesser included offense of manslaughter and that the error requires reversal. We conclude that there was no evidentiary predicate for the instruction. There are two prerequisites to granting a lesser included offense instruction: (1) the lesser offense must consist of some, but not every element of the greater offense; and (2) the evidence must be sufficient to support

the lesser charge. *Simmons v. United States,* 554 A.2d 1167, 1170 (D.C.1989); *Anderson v. United States,* 490 A.2d 1127, 1129 (D.C.1985); *United States v. Comer,* 137 U.S.App.D.C. 214, 218, 421 F.2d 1149, 1153 (1970). Since manslaughter is a lesser included offense of second-degree murder, our focus is on the second requirement, the sufficiency of evidence to support the instruction.

■ If requested, the trial court must give a lesser included offense instruction whenever there is evidence to support it, no matter how weak. *Simmons, supra,* 554 A.2d at 1171; *Robinson v. United States,* 361 A.2d 199, 201 (D.C.1976); *Belton v. United States,* 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967). This evidentiary requirement can be met in one of two ways: " '(1) where there is conflicting testimony on the factual issue, and (2) where the lesser included offense is fairly inferable from the evidence including a reconstruction of the events gained by accepting testimony of some or all of the witnesses even in part.' " *Anderson, supra,* 490 A.2d at 1129 (quoting *(Thomas C.) Robinson v. United States,* 388 A.2d 1210, 1213 (D.C.1978)). The court properly denies the instruction if there is no factual dispute and "finding to the contrary on the only evidence at issue would be irrational." *Rease v. United States,* 403 A.2d 322, 329 (D.C.1979).

■ Before reviewing the evidence to determine its sufficiency to support the charge, we examine briefly the elements of manslaughter and what distinguishes it from the offense of conviction in this case, second-degree murder. Voluntary manslaughter is the unlawful killing of a human being without malice. *Morgan v. United States,* 363 A.2d 999, 1002 (D.C. 1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977). Malice is the factual element which distinguishes murder from manslaughter. *Comber v. United States,* 584 A.2d 26, 36, 42 (D.C.1990) (en banc); *see Logan v. United States,* 483 A.2d 664, 671 n. 8 (D.C.1984). "[A] homicide constitutes voluntary manslaughter where the perpetrator kills with a state of

mind which, but for the presence of legally recognized mitigating circumstances, would render the killing murder." *Comber*, 584 A.2d at 42. Recognized mitigating factors include adequate provocation or the heat of passion produced by fear, rage and anger. *Id.* at 41; *West v. United States*, 499 A.2d 860, 864 (D.C.1985); *Morgan*, 363 A.2d at 1002. A defendant is entitled to a manslaughter instruction where there is evidence of such mitigating circumstances.

■■■ Appellant argues here, as he did before the trial court, that the length of time between the first gunshot and the shots which killed the decedent was so brief that he had no time to formulate the requisite malice for second-degree murder. This argument is premised on a misapprehension of the evidence required to establish malice and factors in mitigation of it. As to the former, malice may be proved by a showing of (1) specific intent to kill; (2) a specific intent to inflict serious bodily harm; or (3) a wanton disregard of the unreasonable risk of death or serious bodily harm.[4] *Comber, supra*, 584 A.2d at 38–39. Here, the unrefuted evidence established that the decedent was shot fatally at close range after he retreated to his vehicle and attempted to escape. These circumstances prove malice under any of the three criteria. Nevertheless, a defendant will be entitled to a manslaughter instruction if there is evidence of legally recognizable mitigating factors which reduce murder to manslaughter. *Id.* at 42. However, the suddenness of the homicidal act is insufficient, standing alone, to negate malice. That a homicide is impulsive or unplanned will not reduce second-degree murder to manslaughter. *See Hall v. United States*, 454 A.2d 314, 317 (D.C.1982). Therefore, we consider whether the evidentiary requirement of recognizable mitigating factors is met in any other way. *See Anderson, supra*, 490 A.2d at 1129.

■■■ Appellant argues for the first time on appeal the theory that he acted in the sudden heat of passion out of fear generat-ed by the circumstances. This claim of provocation is not reasonably inferable from the evidence. The government's evidence established that appellant's assault on Johnson precipitated a beating by several young men which caused Pickens to go to Johnson's defense. Thus, the government's evidence shows that appellant provoked the attack, while Pickens acted only to protect his friend, an action allowed by law. *See Graves v. United States*, 554 A.2d 1145, 1147–48 (D.C.1989). Thereafter, according to the government's evidence, appellant obtained a gun from his co-defendant, who fired it first, and appellant chased the victim back to his car where he shot him as he tried to drive off. These circumstances, as recounted by the government's witnesses, provide no basis for a claim that appellant acted out of fear or in the heat of passion. To reduce murder to manslaughter, not only is a showing of "heat of passion" required, but that passion must arise from sufficient provocation, that is what "would cause an ordinary reasonable person to lose his or her self control and act without reflection[.]" *Brown v. United States*, 584 A.2d 537, 543 (D.C. 1990). Such provocation is not reasonably inferable from the government's evidence. Therefore, we turn to an examination of appellant's evidence to ascertain if an evidentiary basis existed for the requested instruction.

■■■ Appellant offered evidence that some other person, Bo Bo, shot the decedent as the latter sat in his car and attempted to flee from the scene. Of course, an instruction on the lesser included offense is not precluded even though a defendant denies, as appellant did, committing the greater offense. *Wright v. United States*, 505 A.2d 470, 473 n. 3 (D.C.1986); *Adams v. United States*, 558 A.2d 348, 349–50 (D.C.1989). Inconsistency of defenses is not a basis for denial of the instruction. *Adams*, 558 A.2d at 350. However, appellant's remaining evidence sheds no light on appellant's claim that he acted out of fear or adequate provocation. Generally, direct evidence of a killer's men-

---

4. Malice may also be implied where the homicide occurs during the commission of a felony.

*Comber, supra,* 584 A.2d at 39.

tal processes and motivations can only be provided by his testimony. *See Tripp v. State,* 374 A.2d 384, 391 (Md.Ct.Spec.App. 1977). Appellant chose not to testify in this regard. Furthermore, the witnesses who testified on his behalf did not describe a killer motivated by fear. The shooter, as described by appellant's witnesses, ran across the street and urged shooting the victim. The one witness for appellant who continued to watch the crime recounted that the shooter chased the victim back to his car and shot him through the window. Except for the identity of the assailant, this account of the events is consistent with the government's evidence. Without improper speculation, the jury could reach no conclusion as to whether appellant acted out of fear on the evidence before it, and the instruction was properly denied to prevent the jury from doing so.

Moreover, appellant's witnesses' account of the events leading up to the shooting was generally consistent with the government's evidence, although neither observed while viewing the scene what preceded the victim's approach with the bat. That leaves unchallenged the government's evidence that it was appellant who provoked the incident with the bat. Evidence from both sides showed that appellant and his co-defendant subsequently controlled the situation with a gun before the victim was shot at point blank range while sitting in his car. Under the circumstances, we find lacking evidence tending to show that the killing in this case occurred in the heat of passion engendered by adequate provocation.

 Although a defendant is entitled to rely upon testimony of some or all of the witnesses, in whole or in part, in an effort to meet the evidentiary requirement for an instruction, the instruction will not be given if the jury is required to engage in a bizarre reconstruction of the facts to con-

vict of the lesser offense. *Anderson, supra,* 490 A.2d at 1130; *Belton, supra,* 127 U.S.App.D.C. at 207, 382 F.2d at 156. It would require a bizarre reconstruction of the events and an exercise in speculation to conclude that appellant acted without malice or under legally cognizable circumstances in mitigation of murder when he fired the fatal shots at the victim as he sat in his automobile trying to drive away. *See Comber, supra,* 584 A.2d at 41–42.[5] Therefore, we find no error in denial of the instruction.

### III.

 Finally, appellant argues that the trial court erred in denying his motion to sever defendants. There is a strong presumption in favor of joint trials of defendants charged jointly with criminal offenses. *Payne v. United States,* 516 A.2d 484, 489 (D.C.1986). Whether a severance of co-defendants should be granted in the middle of trial is left to the broad discretion of the trial court. *Perry v. United States,* 571 A.2d 1156, 1158–59 (D.C.1990). Reversal is warranted only if the trial court abuses that discretion. *Id.* at 1159. We find no abuse of discretion here. The testimony which appellant contends resulted in prejudice to him because of the joint trial consisted of threats allegedly made by his co-defendant to a government witness. However, this evidence was never in fact disclosed to the jury. Although a witness testified that he had spoken with appellant, the nature of that conversation was never revealed. Therefore, we find no abuse of discretion in the trial court's ruling.

For the foregoing reasons, the judgments of conviction appealed from are

*Affirmed.*

---

5. As pointed out earlier, appellant failed to advance at trial as a basis for the instruction any reconstruction of the events which would have shown that appellant acted in the heat of passion generated by fear. As the *Belton* court observed:

 Here the testimony did not "fairly tend" to bear on manslaughter, and we cannot assign

reversible error to the failure of the trial court to glean and array on its own motion the strained possibilities of events put forward by counsel who have mulled over the appeal, but not advanced at trial either by defense counsel or the witnesses.

*Belton, supra,* 127 U.S.App.D.C. at 207, 382 F.2d at 156.