Anthony E. BRAGDON, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–648.

District of Columbia Court of Appeals.

Argued Sept. 28, 1994.
Decided Nov. 30, 1995.

John D. Kirby, Washington, appointed by the court, for appellant.

Barbara A. Grewe, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III, and Patricia Stewart, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and KING, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

A jury found appellant guilty of one count of assault with intent to rape while armed, as a lesser included offense of armed rape, and one count of possession of a firearm during a crime of violence. On appeal, appellant contends primarily that the trial court erred in (1) admitting into evidence a videotaped identification; and (2) instructing the jury on assault with intent to commit armed rape as a lesser included offense of armed rape. Rejecting the dissent's contention that appellant was entitled to "roll the dice" on the armed rape charge on the facts of this case, we affirm.

## I.

With respect to the charge of rape while armed, the government presented the testimony at trial of the female complainant, C.F. She testified that one early afternoon as she was leaving school, appellant drove by in a truck and inquired if she wanted a ride. When she declined and continued to walk, appellant ordered her into the truck and threatened her with a pistol.[1] She complied. Appellant drove C.F. to his apartment and demanded that she go inside with him. C.F. said that, fearing for her life, she complied. Once inside, appellant walked toward a closet, and C.F. remained in the kitchen reading a newspaper.

C.F. further testified that after appellant told her "you might as well have a seat," she sat down in the living room, and the two began to talk. Appellant started touching her, and she told him to stop. Appellant retrieved his gun from the closet, pointed it at her, and told her to remove her pants. He then produced a condom, placed the gun on the arm of the sofa, and raped and sodomized her on a couch and the floor. C.F., pretending she was in pain, asked appellant for some ice or rubbing alcohol, and he complied. Thereafter, appellant robbed C.F. of ten dollars and drove her to a bus stop. C.F. went home and told a friend what had happened.

The friend told C.F.'s mother who called the police. The police obtained a description of appellant and the truck from C.F. and took her to the hospital for a medical evaluation.

C.F. testified that appellant had vaginal and anal intercourse with her three times. She testified that she was positive appellant penetrated her each time but that appellant did not ejaculate at any time during the attack. The government also presented forensic evidence and testimony by the physician who examined C.F. at the hospital. We discuss that evidence in part III, *infra*, with respect to the propriety of a lesser included offense instruction.

## II.

 In this court, appellant challenges the admission of the victim's videotaped identification of him as her assailant. Appellant argues that because identification and consent were not issues in the case, the videotape had no probative value. Nevertheless, the determination of the relevance of proffered evidence along with the weighing of the probative and prejudicial nature of the evidence is within the sound discretion of the trial judge. *Street v. United States,* 602 A.2d 141, 143–44 (D.C.1992). This court will only disturb the ruling upon a showing of the trial court's abuse of discretion. *Id.* at 144. In this case, the victim's emotional reaction upon identifying appellant is particularly relevant to appellant's defense of fabrication. In addition, the videotape falls below the level at which evidence is excluded as overly prejudicial or likely to sway improperly the jury's deliberations. *See, e.g., Jones v. United States,* 625 A.2d 281, 288 (D.C.1993) (holding government counsel's repeated mentioning of appellant's homosexuality throughout the trial warranted a reversal due to the high risk of prejudicial impact on the jury and the pervasive nature of the statements and inquiries); *Pounds v. United States,* 529 A.2d 791, 794 (D.C.1987) (allowing evidence of father's prior sexual relations with daughter to be admitted due to its probative value). We hold there was no abuse of discretion by the

---

1. The pistol later turned out to be a "starter" pistol which fires blank ammunition.

trial judge in permitting the introduction of the videotape.[2]

## III.

■ Appellant also challenges his conviction on the ground that the trial court erred in instructing the jury, over defense objection, on armed assault with intent to rape as a lesser-included offense of armed rape. He argues that the evidence presented, if believed, proved the armed rape offense to the exclusion of the lesser offense; thus, he was entitled to "take his chances on an all-or-nothing verdict," and the trial court improperly laid the foundation for an "irrational compromise verdict" by giving the lesser-included offense instruction to the jury. *See Lightfoot v. United States,* 378 A.2d 670, 673 (D.C.1977); *see also Price v. United States,* 602 A.2d 641, 644 (D.C.1992); *Ballard v. United States,* 430 A.2d 483, 487 (D.C.1981). We reject that analysis of the evidence.

■ Before a judge may give a lesser-included offense instruction, two requirements must be met: "(1) the lesser offense must consist of some, but not every element of the greater offense; and (2) the evidence must be sufficient to support the lesser charge." *Price, supra,* 602 A.2d at 644. It is well settled in this jurisdiction that assault with intent to rape is a lesser-included offense of rape.[3] The sole issue, therefore, is whether the jury could have rationally acquitted Bragdon of the armed rape charge, and then in turn found him guilty of the lesser offense of armed assault with intent to commit rape. *Glymph v. United States,* 490 A.2d 1157, 1160 (D.C.1985); *Lightfoot, supra,* 378 A.2d at 673; *Ballard, supra,* 430 A.2d at 487. Resolution of that issue turns on an assessment of the evidence presented regarding penetration.

Appellant contends that the jury could only find him guilty of the lesser-included

offense while entertaining reasonable doubt on the greater offense by a "bizarre reconstruction of the evidence." *Walker v. United States,* 617 A.2d 525, 528 (D.C.1992) (citation and internal quotation omitted). It cannot be doubted that the testimony of the complaining witness, if believed, could only support a conclusion that penetration occurred. If no other evidence had been presented on this point, then appellant would be correct. The testimony of the examining doctor and some forensic evidence, however, provide the requisite basis for giving the lesser-included offense instruction.

■ The doctor who examined the complaining witness testified that she (the doctor) found no cuts, bruises or lacerations on the victim, or any signs in the genital area of forced sexual intercourse. Those observations, however, as the doctor acknowledged, were not conclusive on the question of either force or penetration because of the age and the recent birth experience of the victim. The doctor was then questioned, at considerable length, about a medical form she had completed at the time she initially examined the victim. On that form the doctor had checked a box reflecting that there had been no vaginal penetration. The doctor testified:

> It could have been either way. She could have or she could not have [been penetrated]. The findings here were not conclusive.... [I] couldn't tell [one way or the other].

The contents of this form were admitted, at the government's insistence, for impeachment purposes only, and the jury was instructed to that effect. But while the information therefore could not be considered as substantive evidence, *Brewer v. United States,* 609 A.2d 1140, 1141 (D.C.1992), *cert. denied,* 506 U.S. 1068, 113 S.Ct. 1019, 122 L.Ed.2d 166 (1993); *Gordon v. United States,* 466 A.2d 1226, 1231 (D.C.1983), it assuredly

---

2. Appellant also contends the trial court erroneously denied his motion for a mistrial due to the prosecution's introduction of the videotaped lineup at the end of their case rather than during the victim's testimony. The decision to grant a motion for a mistrial is within the trial court's broad discretion, and will only be overturned if the decision appears irrational, unreasonable, or so extreme that failure to reverse would result in a

miscarriage of justice. *Lee v. United States,* 562 A.2d 1202, 1204 (D.C.1989). This is not the case here.

3. *Brown v. United States,* 576 A.2d 731, 734 (D.C.1990); *Johnson v. United States,* 122 U.S.App.D.C. 1, 350 F.2d 784 (1965).

could be considered as weakening the corroborative force, such as it was, of the doctor's testimony that the victim could have been penetrated.

Moreover, during cross-examination, defense counsel made inquiry about the doctor's expectation of whether, under the particular circumstances of the victim's menstruation, blood should have been found on the floor where the offense is alleged to have occurred had there been penetration. The following exchange occurred:

Q. Now, [if there had been penetration] wouldn't it be likely that there would be some kind of seepage [of blood] onto the floor?

A. I would say so . . .

Q. So then, under those circumstances, you would expect to find blood on the floor?

A. I could, yes . . .

The forensic evidence on this point was unequivocal: there was no blood found on the floor. Thus a jury could fairly conclude that the absence of blood meant that there had been no penetration.

■ In weighing the evidence, the jury was free to credit some portions of the victim's testimony while discrediting others. *See Whitaker v. United States*, 616 A.2d 843, 854 (D.C.1992) (jury could doubt complainant's testimony regarding the knife, but accept her testimony about the attack); *Ballard, supra*, 430 A.2d at 487 (jury could conclude that the defendant had intercourse with the victim but not necessarily in the manner in which she described it). Although the victim testified both that the sexual relations had been forcible and that she had been penetrated, the jury could disbelieve the latter portion of her testimony on the basis of the examining doctor's testimony and the forensic evidence supporting a reasonable

doubt as to whether there had been penetration.[4] We acknowledged that same reasonable possibility in *Greene v. United States*, 571 A.2d 218 (D.C.1990), where we stated that despite unequivocal testimony of penetration by the complainant, the jury could rationally have found that penetration was not proven because of the examining doctor's inconclusive testimony, including her acknowledgment of a police form she completed stating that her findings were incompatible with vaginal penetration; but that the jury could also find that the sexual acts were nonconsensual. *Id.* at 222.

Appellant's reliance on *Lampkins v. United States*, 515 A.2d 428 (D.C.1986), is misplaced. There we held that the trial court did not err in refusing to give a lesser-included offense instruction because the evidence "d[id] not affirmatively show, or even suggest, that . . . [the appellant was guilty of the lesser offense rather than the greater; it] merely fail[ed] to support the inference [of guilt of the greater offense]." *Id.* at 433. Lampkins was convicted of possession of cocaine with intent to distribute when he was found with cocaine in quantities and packaging consistent with trafficking, although he had less than five dollars on his person.[5] Because he had very little cash in his possession and there was no evidence of a "money man," Lampkins argued he was entitled to the simple possession instruction. We affirmed the trial court's refusal to give the lesser-offense instruction because these facts, without more, were not inconsistent with possession with intent to distribute; by themselves, they created no dispute as to commission of the lesser crime. *Id.* at 432. Here, unlike in *Lampkins*, there was a factual dispute on the issue—vaginal penetration or not—distinguishing armed rape from assault with intent to rape. Thus, *Lampkins* is inap-

---

4. In fact, appellant's counsel made this precise point in closing argument. Even before that, in arguing for a judgment of acquittal as a matter of law, counsel told the court that because there was no corroboration of the rape charge, and the doctor's testimony was inconclusive, the jury could not find that a rape occurred beyond a reasonable doubt.

5. An expert witness testified that someone in possession of twenty packets of cocaine who had no money on his person could either be working with a money man or "juggler," or had just purchased a fresh supply of drugs for resale. The expert also testified that the packaging of the cocaine in twenty individual packets was consistent with an intent to distribute, and not with personal use. *Lampkins, supra*, 515 A.2d at 429 n. 1.

posite, and the lesser included offense instruction was properly given.

*Affirmed.*

MACK, Senior Judge, concurring in part and dissenting:

With all due respect to my colleagues, I find it very difficult to follow the route to affirmance that the majority takes in rejecting appellant's claim that an instructional error has facilitated an "irrational compromise verdict." It surfaces initially when the majority rejects "the dissent's contention that appellant was entitled to 'roll the dice' on the armed rape charge *on the facts of this case....*" Majority op. at 404 (emphasis supplied). I know we can all agree, however, that an accused does not enter the dice game by choice and that the government has the burden of introducing facts to prove guilt beyond reasonable doubt. I hope we can all agree, and the majority embraces case law for this proposition,[1] that an accused is entitled to take his chances on an "all-or-nothing verdict."

## I.

In my view, the jury's verdict of guilt on the charge of assault with intent to commit rape while armed (an offense not alleged in the indictment) is precisely the kind of compromise verdict this court has found to be incompatible with our notion of justice. Before turning to the legal issues, let me briefly describe the setting in which that verdict was obtained.

On May 22, 1991, the government, presumably aware of the inconsistent nature of a report executed by a gynecologist who examined the alleged rape victim on the day of the crime, indicted appellant, *inter alia,* for armed rape and sodomy offenses. A year later on March 4, 1992, appellant went to trial before a jury. The government presented testimony by the complaining witness (see factual statement, Majority op. at 404), and that of an officer who searched appel-

lant's apartment where the rape allegedly occurred. In addition, the government called the gynecologist whose written findings had been inconsistent with rape, but who testified that her report had been "inconclusive." On cross-examination by the defense attorney, the prosecutor objected to the introduction of the doctor's written report and obtained a ruling by the court that the testimony would be admitted solely for the purpose of impeachment.

In defense, appellant did not take the stand. His counsel outlined his defense; the defendant did not deny that the complaining witness was present in his apartment but he denied threatening her with a gun or having a sexual encounter of any kind with her. Thereafter defense counsel called a Federal Bureau of Investigation forensic scientist to the stand who testified that no blood or semen was found on the carpet where the alleged rape took place or on items of clothing of the alleged victim.[2]

At the conclusion of the testimony, the court agreed, over the objection of the defendant, to instruct the jury as to the uncharged offense of assault with intent to commit rape while armed, noting that it was the defense who brought out, on cross-examination of the government's medical expert, the "possibility" that there was no penetration proven by the government.

On the afternoon of March 9, 1992, the deliberating jury, after a short period of time, informed the court by note that it had reached a verdict on two charges but that it was "sharply divided" on the remaining charges. Counsel agreed to a partial verdict and the court, rejecting a suggestion that a mistrial be declared, took verdicts of "Not Guilty" on the charges of armed rape and assault with intent to commit sodomy while armed. The jury was sent back to resume deliberation following a luncheon recess. At 4:00 p.m., the court informed counsel that it had received yet another note from the jury: "We have tried to reach verdicts on all remaining charges but we [were] deadlocked."

1. *See Lightfoot v. United States,* 378 A.2d 670, 673 (D.C.1977); *Price v. United States,* 602 A.2d 641, 644 (D.C.1992); *Ballard v. United States,* 430 A.2d 483, 487 (D.C.1981).

2. Counsel also called a forensic scientist who testified as to hair and fiber redistribution [or contamination] of articles when placed together in a bag.

The court rejected another request for mistrial and gave the *Winters*[3] charge. On the following morning, March 10, the jury returned to announce guilty verdicts as to assault with intent to commit rape while armed and possession of a firearm with intent to commit rape, but not guilty verdicts as to all remaining charges.

## II.

There is no question that assault with intent to commit rape is a lesser-included offense of rape.[4] The question here, however, is whether the evidence is sufficient to justify the giving of an instruction as to the unindicted assault charge. The test for sufficiency is met where there is either "sharply conflicting testimony" on a factual element or where the lesser-included offense is fairly inferable from the evidence. *See Lightfoot, supra* note 1, 378 A.2d at 673; *Anderson v. United States*, 490 A.2d 1127, 1129 (D.C. 1985). A lesser-included offense instruction may not be given where "the jury would have to engage in an irrational or bizarre reconstruction of the facts of the case." *Id.* at 1130. There must be "a reasonable basis on which the jury could find appellant guilty of the [lesser offense] yet entertain a reasonable doubt as to [the element separating the greater offense from the lesser one]." *Lightfoot, supra,* 378 A.2d at 673.

The majority here, in attempting to set the stage for "conflicting testimony" tells us that the "[r]esolution of that issue [of a rational verdict] turns on an assessment of the evidence presented regarding penetration." Majority op. at 405. If this were the case, I doubt very much that the appellant would be before us. This case was prosecuted upon an indictment for armed rape; the defense was a denial of any sexual activity. The evidence of "penetration" was not a contested issue in this context. The government's only eyewitness (the alleged victim) testified unequivocally that penetration occurred ["three times for anal, three times for vaginal"]. There

was no other testimony to support or refute this claim. With respect to the testimony of the complaining witness, therefore, there was no reasonable basis on which the jury could find appellant guilty of assault with intent to rape and yet entertain a reasonable doubt as to rape; there was no evidence that would rationally support a finding that appellant assaulted the victim with intent to commit rape but did not rape her. As appellant's counsel aptly notes, "to find support in the trial record for a charge of assault to commit rape separate from the actual rape, the jury would have to simultaneously believe and disbelieve the *exact same words* of the complaining witness' testimony." This would constitute a "bizarre reconstruction of the evidence." *Cf. Walker v. United States*, 617 A.2d 525 (D.C.1992).

I find no problem with the broad legal principle that a jury may be free to credit some portions, and to discredit other portions, of the testimony of a victim. But no instruction may be given to the jury which would invite an irrational compromise verdict. *See Ballard, supra* note 1, 430 A.2d at 485–86, where we held that since carnal knowledge is not a lesser-included offense of rape, a jury could have found the defendant guilty of carnal knowledge while exonerating him of rape. I need not belabor the point, however, since my colleagues appear to concede that if one looks only to the testimony of the complaining witness in the instant case, the jury's verdict would constitute a "bizarre reconstruction of the evidence" (*i.e.*, "[i]f no other evidence had been presented on this point, then appellant would be correct." Majority op. at 405). The majority, however, points to, not evidence, but expert testimony (introduced essentially by the defendant to negate guilt on the rape charge) as providing the requisite basis for giving the lesser-included offense instruction. In its own reconstruction of the evidence (and mindful of the fact that the defendant's proffer was not that

---

**3.** *See Winters v. United States*, 317 A.2d 530 (D.C. 1974).

**4.** *See Brown v. United States*, 576 A.2d 731, 734 (D.C.1990), barring convictions for both assault with intent to commit rape and statutory rape on

double jeopardy grounds; *see also Brake v. United States*, 494 A.2d 646, 649 (D.C.1985); *Johnson v. United States*, 122 U.S.App.D.C. 1, 350 F.2d 784 (1965). *See generally Glymph v. United States*, 490 A.2d 1157, 1159–60 (D.C.1985).

there was no penetration but rather *no commission of sexual activity at all* ),[5] the majority combs the record to isolate a single comment of the gynecologist, together with defense testimony introduced by forensic scientists, to establish the purported conflict. The gynecologist, who the government elected to call in the rape case, described her written report (which was not introduced as substantive evidence, but admitted only for impeachment purposes on cross-examination) as "inconclusive." Her brief exchange with defense counsel was more in the nature of an opinion given in answer to a hypothetical question than proffered testimony. When asked whether, if there were penetration (under circumstances of menstruation), the doctor *would* expect to find blood on the carpeted floor, the answer was, "I *could*, yes...." I suggest that this is not conflicting testimony that would justify the giving of an instruction as to the lesser offense.[6] Moreover, it does not provide evidentiary support for the existence of that lesser offense. Under these circumstances, the phrase "blood on the floor" is a non-sequitur except to the extent that it confirms the rationality of the jury's verdict of "not-guilty" as to the greater offense of rape. There is no question that there was no blood on the floor. An investigating police officer saw no stains on the light carpeting. The testifying complaining witness saw no blood on the floor. An FBI forensic scientist (who had conducted "hundreds of thousands of examinations of blood and body fluids" and who was called by the defense) found no blood (and no semen) on the carpet or on the clothing of the complaining witness.

Under these circumstances, it would not have been rational for a jury to disbelieve the adamant testimony of the complaining witness that she had been repeatedly penetrated (which it obviously did) and to embrace or even remember the tentative opinion of the gynecologist (impeached by virtue of her own inconsistent written report), that she "could" expect to find blood on the floor under certain circumstances. It is true that a trial court may instruct, at the request of the government, and over the objection of the defendant, as to a lesser-included offense, but it is also true that there must be a "sufficient" evidentiary predicate to support that charge. *See Glymph, supra* note 4, 490 A.2d at 1160, citing *Lightfoot, supra,* 378 A.2d 670 (where we spoke of "sharply conflicting testimony" to justify the giving of the charge). Compare *Lampkins v. United States,* 515 A.2d 428 (D.C.1986), where the trial court refused to give a defense requested instruction because the evidence "[did] not affirmatively show, or even suggest," that the appellant was guilty of the lesser offense rather than the greater; "[it] merely fail[ed] to support the inference [of guilt of the greater offense]." *Id.* at 433. Even acknowledging that "the jury was free to credit some portions of the victim's testimony while discrediting others," the majority's reconstruction of the evidence does not meet the sufficiency test. Majority op. at 406. As in *Lightfoot, supra,* the testimony here by the alleged victim (as to penetration) was unequivocal and undisputed. The majority's reconstructed evidence here, advancing a dispute about "penetration" (like the evidence in *Lampkins* ) does not affirmatively show or suggest that Mr. Bragdon was guilty of assault; it merely fails to support an inference that he was guilty of rape. Finally, such reconstruction on the surface would appear to me to be incompatible with the duty of the government to prove guilt of the lesser offense beyond a reasonable doubt and would place the defense, duty bound to defend against the charged greater offense, between a "rock and a hard place."

---

5. Defense counsel argued in closing argument that "this inconsistency [between the doctor's testimony and her written police form] alone requires you to find ... him not guilty of the sexual assault, *any sexual assault charges."*

6. The physician testified repeatedly that she was unable to determine from her examination whether the complainant had engaged in non-consensual intercourse or whether the complain-

ant had been sexually penetrated. She also testified that it was not unusual that a woman of the age of the complainant showed no obvious physical signs or injuries after having non-consensual intercourse. There were also statements: "unless she was bleeding heavily, you wouldn't necessarily expect [to find blood on the carpet];" and "[y]ou might not necessarily find blood on the area where she was lying."

■

In my view, the finding of guilt as to the assault with intent to commit rape charge constituted a compromise verdict. Essentially this case was prosecuted for, and defended against, the charge of rape. The suggestion of compromise and prejudice is apparent here not only from the substantive facts but from the circumstances that developed at trial, including the jury's deliberation. The very essence of the law is the failure or non-failure of the appellate courts, before applying principles, to recognize subtle differences in the facts of myriad cases. We owe that much to the courts and the juries charged initially with decision-making.[7] Under the circumstances in the instant case, the defendant was entitled to an all or nothing at all verdict. It was reversible error for the trial court to have instructed (over the objection of the appellant) on the lesser included offense.

I respectfully dissent.

---

[7]. The majority's reliance upon *Greene v. United States*, 571 A.2d 218 (D.C.1990), is misplaced. That decision dealt with the trial court's ability to enhance a sentence for sodomy in the face of acquittal for rape. We noted that the trial court is given wide discretion to determine punishment.