**Reginald A. YOUNG, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 84–72, 84–87 and 84–88.**

District of Columbia Court of Appeals.

Argued Jan. 24, 1986.
Decided June 11, 1986.[1]

---

1. This decision was originally issued as a Memorandum Opinion and Judgment. Appellant requested publication and the division granted his request. Part I, reciting the facts of the case, and a few other explanatory phrases have been added to the published opinion for purposes of clarity.

Calvin Steinmetz, Washington, D.C., appointed by this court, for appellant.

Ellen Bass, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and Mark J. Biros, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, ROGERS and STEADMAN, Associate Judges.

PER CURIAM:

Appellant Reginald A. Young was convicted of various offenses arising out of three unrelated incidents. His counsel gave notice of a common insanity defense, moved for consolidation and a bifurcated trial, and the cases were tried together before a jury. Appellant was convicted of second-degree murder while armed, D.C. Code §§ 22-2403, -3202 (1981), first-degree burglary while armed, *id.* §§ 22-1801 (a), -3202, assault with a dangerous weapon, *id.* § 22-502, possession of an unregistered firearm, *id.* § 6-2311 (a), and possession of a controlled substance, *id.* § 33-502. The combined sentence for these crimes was from twenty-three years to life imprisonment. The issues presented on appeal are (1) whether trial counsel provided ineffective assistance by consolidating three unrelated trials and then abandoning the insanity defense upon which the motion for consolidation was premised;[2] (2) whether the trial court erred in admitting evidence concerning a prior crime as proof of a motive for murder; (3) whether the trial court erred in admitting testimony identifying appellant as a participant in the prior crime; (4) whether the trial court gave an improper jury instruction on second-degree murder as a lesser included offense in the absence of a factual basis to support it; (5) whether the trial court improperly refused to instruct the jury on unlawful entry as a lesser offense included in burglary while armed; (6) whether the trial court unduly restricted appellant's Sixth Amendment right to cross-examine a government witness; (7) whether the evidence was sufficient to convict for possession of an unregistered firearm; and (8) whether incriminating evidence was illegally seized and

---

2. Appellant has new counsel on appeal.

should have been suppressed prior to trial. We affirm.

## I

### The September 21 Incident

On September 21, 1981, appellant broke into the apartment of a former girlfriend, Geraldine Smith. He kicked in the door and stumbled into the room pointing a sawed-off shotgun at Smith. After a struggle, during which the shotgun went off, appellant took the weapon and fled.

Appellant's convictions for burglary while armed and assault with a dangerous weapon resulted from this incident.

### The November 28 Incident

David Wright was appellant's accomplice in various criminal enterprises. In late October 1981, Wright helped appellant and another man in an abortive attempt at an armed robbery of a store in Newport News, Virginia. While appellant struggled with the owner for control of appellant's sawed-off shotgun, Wright and the other accomplice fled the store. Appellant eventually escaped, but the robbery failed.

About a month later, at approximately 2:00 a.m. on November 28, 1981, Wright was shot, at least four times, and killed. That night he and appellant had apparently been involved in another failed criminal enterprise. Appellant, Wright and government witness Mabel Bracey drove to 14th & U Streets, N.W. When they arrived, appellant parked the car and told Bracey he was going to get some "fast money." He took a gun from the car and left with Wright. Wright returned about 20 to 25 minutes later, without appellant, and began driving away. As he did so, appellant came running down the street after the car with an unidentified man in hot pursuit. Appellant was holding his gun and shouting for Wright to "wait." Wright stopped the car. Appellant got in, asking Wright "Why did you do that?", but receiving no reply. After driving a short distance, appellant announced he had dropped "the wallet" and

that he was returning to 14th Street to retrieve it. Bracey prevented him from doing so. At about 1:00 a.m., appellant and Wright left Bracey home and drove away together.

About an hour later, appellant called Bracey and suggested returning to her house. He arrived at about 2:15 a.m. When Bracey inquired as to the whereabouts of Wright, appellant twice responded "I just killed the motherfucker." According to Bracey, appellant admitted doing so because he was "tired of the spots that [Wright] was putting him in." Appellant explained to Bracey that these "spots" were hold-ups committed by himself and Wright in Newport News and elsewhere. Appellant, Bracey testified, told her that Wright hid and left appellant to do everything himself. He showed Bracey the murder weapon, a handgun with four spent shells and one live bullet in it. There was blood on appellant's boots, vest and pants. He was wearing the brown coat worn by Wright that night.

Richard Abernathy also testified for the government. At about 2:00 a.m. on the night of Wright's death his car was stopped at an intersection. A man, later identified as Wright, staggered towards it and opened the door. At first Abernathy and his passenger, William Stinger, pushed Wright away, but they eventually took Wright to the hospital after he collapsed on the street. Wright told them that either "my pal" or "my gal" had shot him. The police subsequently found a trail of blood leading to the intersection. A police officer, in the vicinity at the time, testified that he heard what sounded like two gunshots, a pause, two more shots, another pause, and then a final shot.

After Wright's death Bracey heard from appellant on a number of occasions. He inquired whether she had called the police. Eventually, after receiving threats from appellant, Bracey contacted the police on December 16, 1981. A few months later, after his arrest, appellant called Bracey and said that she must have a "tape record-

er to remember everything the way that you did."

Appellant's role in the November 28 incident resulted in his conviction for the second-degree murder of Wright while armed.

### The December 30 Incident

On the afternoon of December 30, 1981, a police patrol found appellant sitting in an illegally parked car with a companion. He falsely gave the identity of a nephew who, a radio check revealed, was possibly armed and dangerous. The officers observed, in plain view on the floor of the car, items indicating that appellant was a drug user. When appellant was frisked, the officers recovered a syringe, the stained needle cap of which was in plain view protruding out of a front pants pocket. An ensuing search of appellant's clothing revealed a preludin pill in his inside coat pocket. The police officers then requested permission to search the car and, according to appellant's companion as well as the officers themselves, appellant consented to this proposal. In the trunk of the car, the police officers discovered a bag containing a heavy object, which felt like a gun. Inside was an unregistered firearm which carried appellant's fingerprint.

Appellant's convictions for possession of a controlled substance and possession of an unregistered firearm stemmed from this incident.

### The Defense Evidence

Appellant called on his behalf William Stinger, one of the two men who picked up Wright and brought him to the hospital just before his death. Stinger was uncertain as to whether it was "my gal" or "my pal" that Wright had identified as his killer. The defense attempted to impeach the credibility of government witnesses Smith and Bracey and also produced evidence that appellant and Wright were close friends, as were their families. With respect to the prior Newport News robbery, which the government had introduced to prove motive, appellant sought to establish

that Wright had not actually abandoned him, that it was in fact "normal procedure" for Wright to start the getaway car "on the run," and that it was "every man for himself" when the owner of the store, Charles Marshall, began shooting at the car.

## II

■ We discuss only appellant's claim that trial counsel provided ineffective assistance by consolidating three unrelated trials and then failing to present the common insanity defense upon which the motion for consolidation was premised. Specifically, the focus is on consolidation; appellant does not argue that counsel was constitutionally ineffective in failing to pursue the insanity defense irrespective of the consolidation issue. In order to succeed on a claim of ineffective assistance of counsel, appellant must show (a) deficient performance of his trial attorney, reasonably measured under prevailing professional norms, and (b) that this deficiency deprived appellant of a trial whose result is reliable. *White v. United States*, 484 A.2d 553, 558 (D.C.1984); *see Strickland v. United States*, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1983).

Appellant correctly points out that the three consolidated trials had no common factual elements and that they could not have been joined were it not for trial counsel's request. He also accurately notes that simultaneous exposure of the jury to several unrelated crimes had a presumptively prejudicial effect on their consideration of the individual charges. Trial counsel's motion for consolidation was based on a proffered common insanity defense, which was to occupy about ninety percent of the defense testimony in each of the three cases. In his motion to consolidate, trial counsel asserted that "[c]onsolidation would further the important considerations of economy and expedition in judicial administration while simultaneously not prejudicing either the defendant or the government."

We are prepared to accept, for purposes of argument, that trial counsel's consolidation of the three trials fell below prevailing professional norms. There was no apparent basis for the statement that consolidation of three unrelated trials would not prejudice appellant. In addition, trial counsel's deference to "the important considerations of economy and expedition in judicial administration," while undoubtedly worthy in other contexts, was gravely misplaced in a consolidation motion which threatened to seriously prejudice the jury against appellant. Trial counsel's primary duty was to his client; it was not to conserve the resources of the court at appellant's expense. Even more inappropriate, unless asserted for tactical reasons only, was trial counsel's professed concern to avoid prejudice to the government.

Despite these considerations, the government maintains that the decision to consolidate was a reasonable tactical choice, pointing out trial counsel's success in obtaining a bifurcated trial on the proffered common insanity defense. But we can find nothing in the record which would suggest that trial counsel ever sought to obtain three separate bifurcated trials. Such an approach, if successful, would have achieved all of trial counsel's desired objectives without any of the disadvantages of consolidation. Moreover, after completion of the guilt stage of the consolidated and bifurcated trial, the proffered insanity defense—which was to have occupied ninety percent of each of the three trials—was abandoned without explanation. Thus, appellant ultimately suffered only the prejudice of consolidation and enjoyed none of its asserted benefits.

■ Our assumption that trial counsel's performance on the consolidation issue fell below prevailing professional norms is nevertheless insufficient to warrant reversal. Appellant has failed to persuade us, as *Strickland's* two-pronged test requires, that this assumed inadequacy could have affected the outcome of the three trials, even if they were kept separate. Appel-

lant's convictions for first degree burglary while armed, and assault with a dangerous weapon, rested on uncontradicted evidence that appellant, having kicked in the door of Geraldine Smith's apartment, entered pointing a sawed-off shotgun at her. He fled after a struggle during which the gun went off. The second of the three unrelated incidents led to the jury verdict that appellant was guilty of second-degree murder of David Wright while armed. The uncontradicted evidence on that issue showed that appellant and Wright left Mabel Bracey's house together shortly before the killing. About an hour later appellant arrived back at Bracey's house, covered in blood, and confessed the murder. He showed Bracey the murder weapon and four spent shells. The jury heard proof of a motive: appellant's belief that Wright had abandoned him during at least two failed robberies, including one on the night of the killing itself. After Wright's death, appellant inquired whether Bracey had contacted the police, and later remarked on the accuracy of the description she had given them of events on that fatal night. The jury also heard of the statement by the dying Wright that he had just been shot either by "my pal" or "my gal." The last of the three unrelated incidents resulted in appellant's convictions for possession of an unregistered firearm and possession of a controlled substance. The evidence, again uncontradicted, established that a preludin pill was found on his person, along with a syringe, and that a gun, carrying his fingerprint, was found in the trunk of the car which he was driving. Consolidation of the three trials, however imprudent, cannot be said to have deprived appellant of individual trials "whose results[s are] reliable," *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064, especially because at trial the three incidents were kept separate and distinct, *compare Cox v. United States,* 498 A.2d 231, 235–36 (D.C.1985).

### III

■ Appellant's remaining contentions are all without merit. Evidence of the un-

successful Newport News robbery was properly introduced to prove motive, in light of appellant's belief that he had been abandoned by Wright both then and on the night of the murder. *Drew v. United States,* 118 U.S. App. D.C. 11, 16, 331 F.2d 85, 90 (1964). The trial court did not err in admitting testimony that appellant was one of the Newport News robbers when there were sufficient indicia of reliability supporting the challenged identification. *Stewart v. United States,* 490 A.2d 619, 623 (D.C.1985). The jury instruction on second-degree murder as a lesser included offense of first-degree murder was not improper, because a reasonable jury could have concluded that the government had failed to establish beyond a reasonable doubt the elements of premeditation and deliberation which would have distinguished first- from second-degree murder. *Anderson v. United States,* 490 A.2d 1127, 1129–30 (D.C.1985). For the same reason, the trial court properly refused the instruction on unlawful entry as a lesser included offense of first-degree burglary, because only an "irrational or bizarre reconstruction of the facts of the case" could have allowed a reasonable jury to conclude that appellant did not intend to assault his former girlfriend, Smith, when he kicked in the door of her apartment and entered pointing a sawed-off shotgun at her. *Id.* The trial court did not abuse its discretion in restricting appellant's cross-examination of Bracey in a speculative and confusing manner. *Springer v. United States,* 388 A.2d 846, 854–55 (D.C.1978). Appellant's motion for judgment of acquittal on the charge of possession of an unregistered firearm was properly denied, when the circumstances permitted a reasonable jury to conclude that appellant exercised dominion and control over the gun. *Hill v. United States,* 264 A.2d 145, 146–47 (D.C.1970). And, finally, the trial court properly denied appellant's pretrial motion to suppress the drugs and the firearm seized from his person and his car. *Welch v. United States,* 466 A.2d 829, 843–44 (D.C.1983); *United States v. McCarthy,* 448 A.2d 267, 271

(D.C.1982); *Lewis v. United States,* 379 A.2d 1168, 1170 (D.C.1977).

*Affirmed.*