Raynard WOODARD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–1600 & 97–CO–1710.

District of Columbia Court of Appeals.

Argued Nov. 3, 1998.
Decided Aug. 26, 1999.

Jeffrey T. Green, with whom Colleen M. Lauerman, Washington, DC, was on the brief, for appellant.

Stephen R. Martin, Assistant United States Attorney, for appellee. Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman and Clark W. Metz, Assistant United States Attorneys, filed the brief for appellee.

Before STEADMAN, SCHWELB and RUIZ, Associate Judges.

RUIZ, Associate Judge:

After a jury trial, appellant, Raynard Woodard, was convicted of second-degree murder[1] and sentenced to a term of imprisonment of twenty years to life.[2] Woodard contends on appeal that the trial court erred in denying his § 23–110 motion,[3] and in imposing a minimum sentence of twenty years. Because we find that counsel's performance did not prejudice appellant, we affirm the trial court's denial of Woodard's § 23–110 motion, but remand for resentencing in accordance with this opinion.

## I.

On October 16, 1992, at about 5:00 or 5:30 p.m., Raymond Adams saw Woodard entering his home at 924 Ingraham Street,

---

1. D.C.Code § 22–2403 (1996) ("Whoever with malice aforethought ... kills another, is guilty of murder in the second degree.").

2. Following the imposition of sentence, Woodard filed a Motion to Correct an Illegal Sentence and for Resentencing. Because Woodard noted an appeal to this court while his sentencing motion was pending, however, the trial court denied the motion for lack of jurisdiction, but indicated that Woodard's motion would be granted upon remand.

3. After Woodard filed a timely notice of appeal from his conviction, he also filed a motion with the trial court to vacate his convic-

tion pursuant to D.C.Code § 23–110 (1996). This court granted Woodard's motion to stay his direct appeal pending resolution of the § 23–110 motion. Following the trial court's denial of his § 23–110 motion, Woodard appealed, and we consolidated the direct and collateral appeals. Although the parties filed supplemental briefs to this court once the appeals were consolidated, Woodard raised the same issues in both his direct and collateral appeals, i.e. that Woodard was denied his 6th Amendment right to effective assistance of counsel at trial and that Woodard's sentence was illegally imposed.

N.W., with a woman wearing a skirt.[4] Around 5:30 p.m., Sheila Oden, who was in her home next door at 922 Ingraham Street with her boyfriend, Jeffrey Owens, heard a window break and someone screaming. She and Owens went outside and concluded that the noise was coming from Woodard's home at 924 Ingraham Street. Oden then heard a woman screaming from the second-floor bedroom of 924 Ingraham Street, "Stop! Stop! Leave me alone! Help! Help!" Several minutes later, Raymond Adams came out of his house, entered the backyard of 924 Ingraham Street, and tried to get inside the house. He yelled, "Raynard, open the door," but Woodard did not answer and Adams went back to his own house. Soon thereafter, Adams came back outside and Oden expressed concern that no one could enter the house to help. After the screaming stopped, Oden, Owens and Adams went back inside their respective homes.[5]

Between 6:45 and 7:30 p.m., David Attaway, a neighborhood acquaintance, saw Woodard emerge from behind the laundromat, at the corner of Hamilton Street and Georgia Avenue, N.W., with a torn shirt and looking agitated and as though he was in a hurry.[6] At about 7:45 p.m., James Butler went out the back door of his house, which leads to the Ingraham Street alley, and saw what he believed to be a body lying on top of some brush. After getting his next-door neighbor and a nearby woman, they confirmed that it was a body, and Butler's mother called the police.

At about 8:00 p.m., police officers arrived on the scene and saw the corpse of a woman wearing dark-colored sweatpants and a blue and grey sweatshirt with no shoes.[7] In response to a radio broadcast, a detective then entered 924 Ingraham Street to locate a broken, second-floor window, but the bedroom door was padlocked. That same day, Woodard moved out of 924 Ingraham Street. In the course of investigation, the decedent was identified by her fingerprints as Sherrie Sajko. Sometime after the murder, Woodard's half-brother, Marvin Douglas, who also lived at 924 Ingraham Street, found a ring in the house which had belonged to Sherrie Sajko.

On November 24, 1992, police officers entered 924 Ingraham Street with a search warrant and found a broken window in Woodard's second-floor bedroom. They also discovered blood on the side of a dresser inside the room. In the basement, the police found a large light-blue plastic trash can which had dried blood on it and contained a blanket with a very large blood stain on one end. The door to the basement opened out of the rear of the house into the Ingraham alley where the victim's body was found.

At trial, a Federal Bureau of Investigation special agent testified that the DNA from the blood on the mattress pad found in Bullock's second-floor bedroom matched DNA from the victim's blood. Another FBI agent, assigned to the Hairs and Fibers Unit, testified that the carpet fibers found on Sajko's sweatshirt matched those in Woodard's second-floor bedroom. He also testified that the dog hairs found on Sajko's sweatpants and on Sajko's transport sheet matched the dog hairs in Woodard's home. The Deputy Medical Examiner determined Sajko's death was due to "blunt force injuries" to the head, which were too scattered to have resulted from a fall. The examiner also determined that the alcohol and cocaine in Sajko's bloodstream did not cause her death.

---

4. Raymond Adams is Woodard's cousin and lived nearby.

5. Oden testified that she was outside for thirty to forty-five minutes.

6. Attaway testified that appellant's face was "very distorted [and] frightened [him]."

7. A detective testified that based upon the settling of the blood in the dead woman's body, "[i]t was obvious that she was dead originally at another location, remained in a position for a period of time and was moved to th[e] location [in the alley] . . . ."

At the close of the government's evidence, defense counsel rested without putting on any witnesses, and, after a colloquy with the judge, Woodard waived his right to testify on his own behalf. The trial judge then excused the jury and invited the parties to propose jury instructions. When the judge asked whether either party would be requesting jury instructions on lesser-included offenses, defense counsel requested instructions on second-degree murder and involuntary manslaughter. The government responded that it was reluctant to "say much about jury instructions," but didn't believe that involuntary manslaughter was appropriate. After closing arguments, the judge instructed the jury on first-degree murder, second-degree murder and involuntary manslaughter. In doing so, he guided the jury on the order in which the offenses should be considered:

> You should first consider whether Mr. Woodard is guilty of the greater offense of first-degree murder. If you find that ... the defendant is guilty of first-degree murder, do not go on to consider the other two charges. If you find the defendant not guilty of first-degree murder, or if after making all reasonable efforts to reach a verdict with respect to that offense you are not able to do so, you are allowed to consider and should consider the offense of second-degree murder....

The jury convicted Woodard of second-degree murder.

## II.

■ Woodard contends that the trial court erred in denying his § 23–110 motion alleging ineffective assistance of counsel. He asserts that trial counsel's failure to consult with him before requesting lesser-included offense jury instructions constituted deficient performance, and that counsel's unilateral decision to request such instructions was prejudicial because, absent these instructions, he would have been acquitted of first-degree murder.

Under the familiar *Strickland* test, to prove ineffective assistance of counsel, Woodard must demonstrate both that 1) trial counsel's performance was deficient, and 2) the deficiency prejudiced the defendant to the extent that he was deprived of a reliable and fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Bowman v. United States,* 652 A.2d 64, 73–74 (D.C.1994); *Robinson v. United States,* 565 A.2d 964, 970 (D.C.1989); *Curry v. United States,* 498 A.2d 534, 539–40 (D.C. 1984). When evaluating the performance of counsel, trial counsel must be given sufficient latitude to make tactical decisions and strategic judgments which involve the exercise of professional abilities. *See Strickland, supra,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Washington v. United States,* 689 A.2d 568, 574 n. 9 (D.C.1997). In addition, appellant bears a "heavy burden" of proving prejudice. *Curry, supra,* 498 A.2d at 540 (citing *Jennings v. United States,* 431 A.2d 552, 557 (D.C.1981), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982)). Appellant must show that there is a "reasonable probability" that, but for counsel's professional errors, he would not have been convicted. *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present mixed questions of law and fact in which we yield to the trial court's factual findings when supported by the record, but review its legal conclusions de novo. *See James v. United States,* 718 A.2d 1083, 1089 (D.C.1998).

### A. *Deficient performance.*

■ Woodard argues that the decision whether to request jury instructions on lesser-included offenses is critical to the protection of a defendant's liberty interest and, therefore, defense counsel should have consulted or advised him before asking the court to instruct the jury on second-degree murder and involuntary

manslaughter.[8] In its order denying Woodard's claim of ineffective assistance of counsel, the trial court noted that, in this jurisdiction, it is an open question whether the defendant or counsel makes the ultimate decision regarding lesser-included offense jury instructions. The trial court concluded that the decision to ask for lesser-included instructions is essentially one of trial strategy, and therefore the prerogative of trial counsel, but that the decision is of such importance that it requires full consultation with the defendant. The trial court held, however, that failure to consult with a defendant on lesser-included offense jury instructions does not constitute ineffective assistance of counsel as a matter of law absent some finding of prejudice. We agree with the trial court that the issue of who makes the ultimate decision whether to request lesser-included offense jury instructions has not been decided in this jurisdiction.[9] Moreover, other jurisdictions differ on this issue. *Compare People v. Brocksmith,* 162 Ill.2d 224, 205 Ill.Dec. 113, 642 N.E.2d 1230, 1235 (1994) (Freeman, J., concurring) (noting decision to tender lesser-included offense instruction is a matter of trial strategy and is, therefore, ultimately counsel's to make), *and Chao v. State,* 604 A.2d 1351, 1358 (Del.1992) (placing burden of requesting lesser-included offenses in jury instructions on defense counsel who "determine trial tactics and presumably act in accordance with a formulated strategy"), *superseded by statute as stated in Lawrie v. State,* 643 A.2d 1336 (Del.1994), *and Van Alstine v. State,* 263 Ga. 1, 426 S.E.2d 360, 363 (1993) (concluding that decision to request a lesser-included offense instruction is essentially one of trial strategy and, while it is important for counsel to consult with defendant on strategy, whether failure to consult constitutes ineffective assistance depends on the facts of the case), *with Brocksmith, supra,* 205 Ill.Dec. 113, 642 N.E.2d at 1232 ("[b]ecause it is defendant's decision whether to initially plead guilty to a lesser charge, it should also be defendant's decision to submit an instruction on a lesser charge at the conclusion of the evidence"), *and In re Trombly,* 160 Vt.

8. The record reflects that the defendant was neither consulted on jury instructions nor was he given the opportunity to decide whether to seek submission of lesser-included offenses to the jury. Woodard submitted an affidavit indicating that he was not consulted before his trial counsel requested jury instructions on second-degree murder and involuntary manslaughter. Woodard's trial counsel also offered an affidavit stating that he has no present recollection of whether he discussed the lesser-included offense instruction option with Woodard. Although the government argues that Woodard was present throughout the jury instructions conference, the record reveals that the discussion between the judge and counsel was conducted largely in legal terminology:

> Defense counsel: Your Honor, I would like instruction number 4:17.
> The Court: 4:17?
> Defense counsel: Yes, Your Honor.
> The Court: But that's first-degree premeditated murder and second-degree murder . . .
> Defense counsel: That's correct.
> The Court: All right.
> Defense counsel: And the reason I say that, I think justification, mitigation, as I under-

stand the law, really is an affirmative defense. We didn't put on a defense and there—we're talking about different things here, I think.
> The Court: So you're talking about "A".
> Defense Counsel: "A" and "B". . . . I would also request the manslaughter, "C," misdemeanor manslaughter instruction because I believe that's the manslaughter instruction.

9. In this jurisdiction, it has been indicated that trial courts should not instruct on a lesser-included offense unless a party requests such instruction. *See Bostick v. United States,* 605 A.2d 916, 920 (D.C.1992) (citing *Walker v. United States,* 135 U.S.App. D.C. 280, 283, 418 F.2d 1116, 1119 (1969)) (trial court discouraged from, *sua sponte,* instructing on lesser-included offenses because such instructions are not "inevitably required in our trials," and the issue is "best resolved, in our adversary system, by permitting counsel to decide on tactics"); *see also Hagans v. State,* 316 Md. 429, 559 A.2d 792, 804 (1989) (noting that the decision whether to request a jury instruction on an uncharged lesser-included offense "is a matter of prosecution and defense strategy which is best left to the parties").

215, 627 A.2d 855, 856 (1993) ("once defense counsel consults fully with the client about lesser included offenses, the defendant should be the one to decide whether to seek submission to the jury of those offenses") (internal quotations omitted), *and State v. Boeglin*, 105 N.M. 247, 731 P.2d 943, 945 (1987) (noting that it is the defendant, not defense counsel, who decides whether to request lesser-included offense instructions); *see also* ABA CRIMINAL JUSTICE PROSECUTION AND DEFENSE FUNCTION STANDARDS § 4–5.2 commentary at 202 (3d ed. 1993) ("It is also important in a jury trial for the defense lawyer to consult fully with the accused about any lesser included offenses the trial court may be willing to submit to the jury."). Like the trial court, however, we do not decide this issue because we conclude that Woodard was not prejudiced by defense counsel's failure to consult with him before requesting jury instructions on second-degree murder and manslaughter.[10] *See Strickland, supra,* 466 U.S. at 697, 104 S.Ct. 2052 (recommending that where it is easier to dispose of an ineffectiveness claim on the ground of 'lack of sufficient prejudice, court need not address deficiency prong); *Washington, supra,* 689 A.2d at 571 (same).

## B. *Prejudice.*

■ Woodard's claim of prejudice lies in his assumption that, but for defense counsel's request for jury instructions on lesser-included offenses, the jury would not have been so instructed and, in light of the jury's acquittal on the first-degree charge, he likely would have been acquitted of first-degree murder in the hypothetical situation that first-degree murder was the only charge presented to the jury for decision. If it were reasonable to assume that if Woodard's trial counsel had not requested the second-degree murder instructions, it would not have been given, Woodard would have shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052. Although it is far from certain that a jury faced with only a first-degree murder charge will decide in the same manner as one given a graduated series of offenses, a reasonable probability does not require "[c]ertainty," *Byrd v. United States,* 614 A.2d 25, 32 (D.C.1992), but a

---

10. At oral argument, Woodard also asserted that the second-degree murder instruction was improper because the indictment for first-degree murder failed to put him on notice that he could be convicted of second-degree murder and, if he had been on notice, he would have presented a different case. Because appellant did not raise this claim prior to oral argument, we do not consider it. *See Berg v. United States,* 631 A.2d 394, 396 n. 8 (D.C.1993) (noting that points not raised in briefs are treated as abandoned) (citation omitted); *RDP Dev. Corp. v. Schwartz,* 657 A.2d 301, 304 n. 3 (D.C.1995) (refusing to consider point raised for the first time at oral argument). In any event, the law is settled that an indictment on a greater offense puts the indictee on notice that the prosecution might also press a lesser-included charge. *See Walker, supra* note 9, 135 U.S.App. D.C. at 283, 418 F.2d at 1119; Super. Ct.Crim. R. 31(c) ("[t]he defendant may be found guilty of an offense necessarily included in the offense charged"); *see also Towles v. United States,* 521 A.2d 651, 657 (D.C.) ("The very concept of a 'lesser-included' offense ... is that when a defendant is charged by indictment with a serious felony he is automatically accused of the elements of less serious crimes which fall short of the major offense."), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3236, 97 L.Ed.2d 741 (1987). In this case, second-degree murder is "clearly a lesser included offense for all purposes of first degree premeditated murder." *Fuller v. United States,* 132 U.S.App. D.C. 264, 293, 407 F.2d 1199, 1228 (1967), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); *see also Swann v. United States,* 648 A.2d 928, 933–34 (D.C.1994); *Turner v. United States,* 459 A.2d 1054, 1057 (D.C.1983), *aff'd on reh'g,* 474 A.2d 1293 (D.C.1984); *Franey v. United States,* 382 A.2d 1019, 1021 n. 2 (D.C.1978). Appellant failed to indicate why this particular indictment did not put him on notice that he might be subject to a second-degree murder charge, nor does our review of the indictment suggest that the notice was inadequate.

" 'probability sufficient to undermine confidence in the outcome.' " *Mack v. United States,* 570 A.2d 777, 783 (D.C.1990) (quoting *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052).[11]

The problem with appellant's argument is that his premise is flawed. As the trial court concluded, Woodard was not prejudiced by defense counsel's jury instructions request because, had defense counsel not requested the instructions, the government would have asked for and received a second-degree murder instruction. This conclusion is supported by the record. William E. Lawler III, the Assistant United States Attorney who tried the case, submitted an affidavit as part of the government's opposition to Woodard's § 23–110 motion in which he stated:

> Based on the nature of the case, it was my intention to request that the Court instruct the jury as to the lesser included offense of Second Degree Murder when jury instructions were given. I never had to ask the Court to give this instruction because defendant's trial counsel asked that this instruction be given. Had defendant's trial counsel not asked for an instruction on Second Degree Murder, I would have asked for the instruction.

Woodard's trial counsel supported this assertion in his own affidavit, explaining that it was his impression "based upon statements made by the government that if I had not asked for an instruction as to Second Degree Murder the government would have made such a request." These assertions are supported by the government's contemporaneous statements at tri-al regarding lesser-included offense jury instructions. In response to Woodard's motion for judgment of acquittal, the government stated that "it's clear that although there may be lesser-included offense instructions that are appropriate, it's also … appropriate for the charge of first-degree murder to go [to the jury]." Moreover, after defense counsel requested second-degree murder and involuntary manslaughter instructions, the government took issue only with the involuntary manslaughter charge, indicating that it found the charge speculative based on the evidence. The government did not contest the second-degree murder instruction, but instead objected to defense counsel's request to remove certain language from the instruction. On this record, we hold that the trial court did not err in concluding that Woodard was not prejudiced by defense counsel's jury instructions request, based on its finding that the government would have requested a second-degree murder instruction if defense counsel had not done so.

 Woodard further maintains that a defendant not only has the right to be consulted, but also has the right to go "all or nothing" on the original indicted offense even if the government requests jury instructions on lesser-included offenses. Under this theory, defense counsel's jury instructions request prejudiced Woodard because it precluded him from taking the "all or nothing" approach. We disagree that any party has such a unilateral right in pursuit of a risk-all strategy. According to our case law, " 'the chargeability of lesser included offenses rests on a principle of

---

11. The trial court disagreed with Woodard's characterization of the evidence, finding that "given the stark choice of whether to acquit or convict Woodard of first degree murder, the jury would have made the latter choice." *Cf. Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (explaining that the absence of a lesser-included offense instruction in a capital murder case "increases the risk that a jury will convict simply to avoid setting the defendant free"); *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (finding that "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense," but leaves some doubt regarding an element that would justify a capital conviction, failure to give jury the " 'third option' of convicting on a lesser included offense … enhance[s] the risk of an unwarranted conviction"). We need not reach this issue, however, as we find no prejudice for the reasons stated in the text.

mutuality, that if proper, a charge may be demanded by either the prosecution or defense.'" *Lightfoot v. United States,* 378 A.2d 670, 673 (D.C.1977) (quoting *Fuller, supra* note 10, 132 U.S.App. D.C. at 295, 407 F.2d at 1230); *see also Towles, supra* note 10, 521 A.2d at 657 (where evidence supports it, a lesser included offense "'may be requested *by prosecution or defense*'") (quoting *United States v. Whitaker,* 144 U.S.App. D.C. 344, 348 n. 11, 447 F.2d 314, 318 n. 11 (1971)) (emphasis in original). A lesser-included offense instruction is proper where 1) the lesser included offense consists of "some, but not every element of the greater offense;" and 2) the evidence is sufficient "to support the lesser charge." *Bragdon v. United States,* 668 A.2d 403, 405 (D.C.1995) (citation omitted), *subsequent appeal at* 717 A.2d 878 (D.C.1998); *Simmons v. United States,* 554 A.2d 1167, 1170 (D.C.1989) (citation omitted). Any evidence, however weak, is sufficient to support a lesser-included instruction so long as a jury could rationally convict on the lesser-included offense after crediting the evidence. *See Wilson v. United States,* 711 A.2d 75, 77 (D.C.1998) (per curiam); *Shuler v. United States,* 677 A.2d 1014, 1017 (D.C.1996); *Simmons, supra,* 554 A.2d at 1170; *Glymph v. United States,* 490 A.2d 1157, 1160 (D.C.1985) (explaining that "[t]he test is not whether there is an objection from either party, but whether the evidence supports the giving of the instruction"). A trial judge can properly deny the requested instruction "'only if there is no factual dispute and a finding to the contrary on the only evidence at issue would be irrational.'" *Smith v. United States,* 686 A.2d 537 (D.C. 1996) (quoting *Rease v. United States,* 403 A.2d 322, 329 (D.C.1979) (citation omitted)), *cert. denied,* 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997).

▇▇ In this case, the jury instruction on second-degree murder as a lesser-included offense of first-degree murder was not improper because a reasonable jury could have concluded that the government failed to establish premeditation, the only element distinguishing first from second-degree murder. *See Wilson, supra,* 711 A.2d at 77 (finding evidence sufficient to support second-degree murder instruction on charge of first-degree murder where "'various inferences as to premeditation or the lack thereof could reasonably be drawn from the circumstances'" of the case) (quoting *Henderson v. United States,* 678 A.2d 20, 21 n. 2 (D.C.1996)); *Young v. United States,* 515 A.2d 1090, 1095 (D.C. 1986). As acknowledged by the trial court, given the evidence in this case, the jury could rationally determine that there was no premeditation or deliberation and, therefore, convict Woodard of second-degree murder. Thus, because the government was entitled to request a second-degree murder instruction, even over defense counsel's objection, Woodard's "all or nothing" claim is unavailing.

## III.

Appellant also maintains that the trial court erroneously imposed a minimum sentence of twenty years imprisonment on his second-degree murder conviction, thereby exceeding the fifteen-year minimum. The government concedes this issue, and, in a February 6, 1995 order, the trial court stated that, while in its view, it no longer had jurisdiction to grant the relief requested, Woodard's motion for resentencing would be granted on remand.

▇▇ At the time Woodard was sentenced, D.C.Code § 22–2404(c) (1981) provided that "[w]hoever is guilty of murder in the second degree shall be imprisoned for life or not less than 20 years." Section § 24–203(a) (1981) read: "[w]here the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment." Under this language, the trial court has the authority to sentence a defendant to a maximum period of life imprisonment, but with a corresponding minimum period of up to fifteen—not twenty—years. *See Haney v. United*

*States,* 473 A.2d 393, 394 (D.C.1984). Thus, as the trial court acknowledged, its imposition of a twenty-year minimum on a life sentence was error which should be corrected on remand.[12]

For the foregoing reasons, we affirm the trial court's denial of Woodard's § 23–110 motion, but vacate Woodard's sentence and remand for resentencing not inconsistent with this opinion.

*Remanded.*

---

**12.** Section 22–2404(c) of the D.C.Code was revised in 1995 as follows:

> Whoever is guilty of murder in the second degree shall be sentenced to a maximum period of incarceration of not less than 20 years and not more than life. Notwith-

standing any other provision of law, where the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 20 years imprisonment.

D.C.Code § 22–2404(c).