**Birchard LEFTRIDGE, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 97–CF–727, 99–CO–830.**

District of Columbia Court of Appeals.

Argued Oct. 26, 2000.
Decided Sept. 13, 2001.

---

Reginald M. Sealey, Washington, DC, appointed by the court, for appellant.

Maria N. Lerner, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., Karla Dee Clark and Henry K. Kopel, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges and Mack, Senior Judge.

GLICKMAN, Associate Judge:

Birchard Leftridge was tried along with a co-defendant on charges of armed robbery, related weapons offenses, and receiving stolen property. The government presented evidence that the two defendants used a stolen car as the "staging area" for an armed robbery that was interrupted *in medias res* by the police. Leftridge was convicted, however, only of receiving stolen property (the car), in violation of D.C.Code § 22–3832 (1996), recodified as § 22–3232 (2001).[1] Leftridge moved pursuant to D.C.Code § 23–110 (2001) to vacate his conviction on grounds of ineffective assistance of counsel. Judge Canan denied that motion after an evidentiary hearing. Leftridge then moved for a new trial, which Judge Canan also denied.

■ In this consolidated appeal, Leftridge contends that his trial counsel pursued a defective strategy in his effort to discredit the evidence that Leftridge knowingly possessed stolen property, and

---

1. The co-defendant was acquitted of all charges.

therefore was constitutionally ineffective. We reject this contention. We agree with Judge Canan that Leftridge's counsel made a reasonable choice under the circumstances. That the defense strategy had a potential drawback, or that an alternative strategy might reasonably have been selected, does not mean that counsel's performance was constitutionally deficient.

Leftridge also contends that he is entitled to a new trial in light of newly discovered evidence, and because his prosecutor failed to inform the trial court that a government witness had testified falsely. We reject these arguments too. The requirements for granting a new trial based on newly discovered evidence have not been met. Nor did the prosecutor knowingly permit false testimony to be presented or to go uncorrected.

## I.

### A.

▓▓▓ At the time of his arrest, Leftridge was in the driver's seat of a parked car that had been stolen the previous week. The disputed issue at trial on the receiving stolen property charge was whether Leftridge knew or had reason to believe that the car he thus occupied was stolen.[2] To prove that Leftridge possessed the requisite guilty knowledge, the government relied heavily on the testimony of the arresting officer, Tommy

Barnes.[3] Officer Barnes testified that after he placed Leftridge in custody, he removed a set of keys from the ignition of the car. He put the keys on the roof of the car and asked the owner of the vehicle, who was also on the scene, whether the keys were his.[4] Observing this activity, Leftridge banged on the window of the police transport car in which he was sitting and called out "those are my keys. You can't give him my keys." Officer Barnes then examined the keys and saw that they were not car keys, but appeared to be house keys.

The theory of the prosecution, as argued at trial, was that Leftridge must have put his house key in the ignition, where it obviously did not belong, for purposes of deception, and that this act of deception implied that he knew that the car was stolen.

To combat this implication of guilty knowledge (in a case in which his client elected not to testify), defense counsel sought to discredit Officer Barnes' testimony that he found Leftridge's house keys *in the ignition*. If the keys were not in the ignition, there was no act of deception on the part of Leftridge, and hence no inference of guilty knowledge to be drawn. Accordingly, defense counsel cross-examined Officer Barnes about what he did with the keys. By means of a leading question, counsel drew the admission from Officer Barnes that he "gave those keys back to

---

2. An element of the offense of receiving stolen property is that "at the time [the defendant] received, possessed or obtained control over the property, he knew or had reason to believe that the property was stolen." *Moore v. United States,* 757 A.2d 78, 82 (D.C.2000); *see* D.C.Code § 22–3232 (2001).

3. Where possession is not satisfactorily explained, the requisite state of mind may be inferred just from the fact that the property was stolen recently. *See Moore, supra* note 2,

757 A.2d at 83. In this case, however, the government did not rely on that inference alone to carry the day.

4. Officer Barnes testified that the owner said that the keys were not his. The trial court sustained a hearsay objection to this testimony and ordered it stricken. Although the owner himself did testify, he was not asked whether the keys recovered by Officer Barnes were his.

Mr. Leftridge."[5] The theory of the defense, urged in closing argument to the jury, was that if Officer Barnes had really discovered Leftridge's house keys in the ignition of a stolen car, he would have seized those keys as evidence. He would not have returned the keys, counsel argued, to the very person found in unlawful possession of the vehicle. Pressing the point, counsel asked the jury to conclude that "there were never any keys in the ignition."

The keys that Officer Barnes retrieved were not produced at trial. No one explained or commented on their absence. As both sides had learned in preparing for trial, however, the keys were missing. Leftridge did not have them. Exactly when and how the keys were lost has never been determined, though there is no evidence of bad faith. At the hearing on Leftridge's motion to vacate his conviction, Officer Barnes testified that he placed the keys on the roof of the car after Leftridge said they were his. He said that "when one of the officers took his property off the car where the keys was, [he] assumed that the keys went" to Leftridge's prisoner's property envelope along with his other personal effects. Officer Barnes never saw the keys again. When he testified at trial that he "gave" the keys back to Leftridge, he meant simply that he left the keys to go with the rest of Leftridge's personal property.

Following the arrest and prior to trial, defense investigators retrieved the property envelope in order to recover Leftridge's possessions, including the keys. The keys were not there. Nor were the keys listed on the prisoner's property receipt form that was prepared in connection with Leftridge's arrest.

The prosecutor testified at the post-conviction hearing that he too had inquired about the keys, which he wanted to use as evidence against Leftridge at his trial. He was told by Officer Barnes that the keys were treated as prisoner's property, but, he said, he "never learned to my satisfaction ... whether for sure or not the keys had made it into the prisoner property envelope." For his part, defense counsel likewise did not know how the keys were lost. In his testimony at the hearing he stated that the fact that the keys were not in the envelope did not mean to him that they were never with Leftridge's personal property, or that the explanation for the loss of the keys was anything other than some sort of administrative error.

### B.

In moving to vacate his conviction on Sixth Amendment ineffectiveness grounds, Leftridge contended that his defense counsel performed deficiently, to the prejudice of his defense, when counsel elicited and emphasized the testimony that Officer Barnes gave him the keys that were removed from the stolen car. Leftridge argued that his counsel thereby "led the jury to infer that [he] was able to produce the missing keys at trial and ... prove that they were [either] the real car keys (in which case no inference ... that he knew the car was stolen could be drawn) or his personal keys (in which case it could be inferred, as the prosecution contended, that he was using the keys in the ignition to fool people into believing that he owned the car)." Since he did not produce the keys, Leftridge reasoned, the jury must

---

5. In its entirety, the cross-examination on this point was as follows:

Q. You've indicated keys were recovered?
A. Yes.

Q. And you gave those keys back to Mr. Leftridge, right?
A. Yes.

have believed that it was because they were his personal keys, which incriminated him.

■ Leftridge contended that to perform effectively, his defense counsel should have introduced his prisoner's property records in evidence at trial to show that he did not in fact have the keys.[6] In addition, he claims, counsel should have argued that because the police lost the keys, the government could not prove that the keys did not belong to the car.

After reviewing the transcript of the trial, and holding a hearing in which defense counsel, the prosecutor, Officer Barnes, and other witnesses testified, Judge Canan rejected Leftridge's ineffectiveness claim and denied his motion to vacate his conviction.[7] Noting that defense counsel had successfully secured Leftridge's acquittal on the armed robbery and weapons counts, Judge Canan concluded that counsel's overall performance was "very effective and competent."[8] In addition, Judge Canan specifically concluded that counsel did not perform deficiently, but rather made "a reasoned, intelligent tactical decision," when he chose to elicit from Officer Barnes that he gave the keys back to Leftridge. Regarding Leftridge's claim that his defense counsel failed to present "exculpatory evidence in the form of the police property ... reports" and "sponsor[ed] incorrect testimony," Judge Canan ruled that these were a "matter of tactics" which would be "inappropriate to second guess." While another attorney might have employed a different strategy to discredit Officer Barnes' testimony that house keys claimed by Leftridge were in the ignition of the stolen car, that possibility, Judge Canan ruled, did not establish that defense counsel was ineffective in pursuing the strategy that he did choose to follow.

After Judge Canan issued his ruling, Leftridge moved for a new trial based on the allegedly newly discovered evidence acquired during the hearing that the keys were not recovered by the police after Officer Barnes left them unsecured on the roof of the car. Judge Canan denied this motion on the ground that the evidence was not newly discovered, inasmuch as defense counsel knew prior to trial that the keys were not included with Leftridge's personal property and had somehow been lost.[9] "Indeed," Judge Canan found, "the

---

6. Leftridge also argued that his defense counsel should have used the prisoner's property receipt to impeach Officer Barnes. However, as counsel explained at the § 23–110 motion hearing, Officer Barnes did not prepare that receipt, and it did not refute his testimony that he found non-car keys claimed by Leftridge in the ignition.

7. Leftridge also advanced other ineffective assistance claims in his § 23–110 motion, which Judge Canan also denied. Those other claims have not been pursued on appeal.

8. As Judge Canan found, defense counsel conducted extensive pre-trial investigation and discovery, worked closely with his client, filed appropriate pre-trial and post-trial motions, presented a defense that "undercut the guts of the government's case," and made a "coher-ent, articulate and effective" opening statement and closing argument. Judge Canan also found that defense counsel "skillfully" utilized "a multitude of source materials, including the preliminary hearing transcripts and various police reports," to impeach Officer Barnes "on any number of issues in any number of ways." Leftridge does not dispute these findings, and concedes that Judge Canan "cannot be faulted for concluding that defense counsel's 'performance was overall very effective and competent.'"

9. "Clearly," Judge Canan stated, defense counsel "knew or was in a good position to know that the keys were not in the prisoner's personal property and indeed [defense counsel] opined that he believe[d] there was some type of administrative slash clerical error that took place regarding these keys."

defense showed due diligence in attempting to understand the significance of the keys and . . . understood the significance of the keys but decided . . . as a matter of strategy, to use that evidence as I've previously indicated."

## II.

To succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient, and, if so, (2) that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In this case, Judge Canan determined that Leftridge did not establish deficient performance, and therefore did not reach the question of prejudice. In reviewing such a determination, "we yield to the trial court's factual findings when supported by the record, but review its legal conclusions de novo." *Woodard v. United States,* 738 A.2d 254, 257 (D.C.1999) (citation omitted).

"Deficient performance," the Supreme Court held in *Strickland,* means "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. 2052. The standard "is that of reasonably effective assistance. . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 687–88, 104 S.Ct. 2052. "[I]n any given case," there may be "a wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. It follows that "[w]hen evaluating the performance of counsel, trial counsel must be given sufficient latitude to make tactical decisions and strategic judgments which involve the exercise of professional abilities." *Woodard,* 738 A.2d at 257. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. "[M]ere errors of judgment and tactics as disclosed by hindsight do not, by themselves, constitute ineffectiveness." *Lane v. United States,* 737 A.2d 541, 549 (D.C.1999) (quoting *Curry v. United States,* 498 A.2d 534, 540 (D.C. 1985)).

We agree with Judge Canan that Leftridge's defense counsel made a professionally reasonable strategic choice, after thorough investigation, that cannot be deemed deficient or ineffective. In assessing the choice that counsel made, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We must, therefore, consider the task confronting Leftridge's counsel at trial, and the "plausible options" that were open to counsel. The challenge for defense counsel at trial was to counter Officer Barnes' testimony that Leftridge's keys were in the ignition of the stolen vehicle—a fact that, the prosecution plausibly argued, revealed consciousness of guilt on Leftridge's part. What alternative approaches to meeting that challenge were available?

One possible approach would have been to ask the jury not to believe that Leftridge ever said that the keys were his. Defense counsel reasonably could conclude that this approach stood little chance of success. Among other things, Officer Barnes' testimony that Leftridge claimed the keys explained why the police neither seized the keys as evidence nor turned them over to the owner of the stolen car. Other witnesses could be expected to con-

firm that Leftridge said that the keys were his.[10]

Another possible approach, as Leftridge argues, would have been to dispute Officer Barnes's testimony that the keys he found were house keys, not car keys. As Leftridge points out, the prosecution could not produce the keys for the jury to inspect. But defense counsel reasonably could conclude that this approach too had scant hope of success. If the keys had belonged to the car, then Leftridge almost certainly would not have said they were his. Moreover, there was no evidence that Officer Barnes mistook the nature of the keys, and the owner of the car might have confirmed that the keys were not his. *See* note 4, *supra*.

Defense counsel elected to pursue a third approach—to contend that the keys recovered by Officer Barnes and claimed by Leftridge on the scene were not in the ignition of the stolen car. Counsel reasonably could conclude that this approach had the best chance of success. Officer Barnes' admission that he gave the house keys back to Leftridge supported the argument that they were not in the ignition, because if the keys had been there, Officer Barnes arguably would have held them as evidence. And if Leftridge's keys were not in the ignition, there was no deception on the part of Leftridge and the keys were not incriminating. We agree with Judge Canan that, in pursuing this third approach, counsel adopted a well-reasoned and intelligent strategy.

As Leftridge argues, the leading question that defense counsel asked Officer Barnes in order to implement his strategy—"And you gave those keys back to Mr. Leftridge, right?"—incidentally might have conveyed the mistaken impression that Leftridge was in possession of the keys at the time of trial.[11] The potential harm to his defense that Leftridge posits from conveying such a mistaken impression is that it could have led the jury to infer from his failure to produce the keys that they indeed did not belong to the car. Perhaps so, although the prosecutor did not ask the jury to draw such an inference. But the possibility—rather speculative, it must be said—that the jury on its own would make such a "missing evidence" deduction was not a significant drawback. There was not much hope of discrediting the testimony that the keys were house keys in any event, and, given the defense strategy, there was no reason to try. After all, the defense strategy was based on Officer Barnes' decision to return the keys to Leftridge. The very reason he made that decision was that the keys did not belong to the car.

Defense counsel's strategy may not have been the only possible strategy that could have been pursued, nor was it necessarily without potential shortcomings. But in the circumstances presented, and considering the alternatives, it was a reasonable strategy, and it was selected by defense counsel on the basis of sufficient pretrial investigation. In pursuing that strategy as he did, defense counsel was not ineffective.

### III.

We address Leftridge's remaining arguments summarily. First,

---

**10.** At the § 23–110 motion hearing, Officer Everett Williams, who was on the scene with Officer Barnes, testified that he too heard Leftridge lay claim to the keys.

**11.** Leftridge does not suggest that defense counsel intended to convey that misimpression, and we have no reason to think that he did. As far as it appears, counsel was focused solely on the behavior of Officer Barnes, not on what became of the keys.

Judge Canan did not err in denying Leftridge's motion for a new trial based on newly discovered evidence. His ruling was "reasonable and supported by evidence in the record." *Graham v. United States,* 703 A.2d 825, 831 (D.C.1997). For a new trial motion based on newly discovered evidence to succeed, "(1) the evidence must be newly discovered; (2) the moving party must show diligence in efforts to procure the new evidence; (3) the material must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such a nature that an acquittal would likely result from its use." *Byers v. United States,* 649 A.2d 279, 287 (D.C.1994). For the reasons Judge Canan found, the evidence on which Leftridge relies—Officer Barnes' testimony at the § 23–110 motion hearing that he left the keys on the roof of the car, and did not personally give them to Leftridge or put them with his other personal property—did not satisfy these requirements. Defense counsel already knew that the keys were not in his client's prisoner's property envelope or recorded on the prisoner's property receipt, and he also knew that the police had not preserved the keys as evidence. To the extent that Officer Barnes furnished any additional information, it was at best merely cumulative or impeaching. Nor, for essentially the reasons we have already provided in rejecting Leftridge's ineffectiveness claim, can we agree that an acquittal would likely result from the use of Officer Barnes' testimony in a new trial.

▮ Second, we do not agree with Leftridge that he was denied due process when the prosecutor at his trial did not correct Officer Barnes's testimony that he gave the keys back to Leftridge. "A prosecutor may not knowingly present false evidence or permit evidence, known to be false, to go uncorrected." *Hawthorne v. United States,* 504 A.2d 580, 589 (D.C. 1986) (citations omitted). "A defendant is accordingly entitled to a new trial if there is 'any reasonable likelihood' that false testimony could 'have affected the judgment of the jury.' " *Id.* (quoting *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.E.d2d 104 (1972)). These principles do not require reversal here. Officer Barnes' one word "yes" answer to a leading question by defense counsel stating that he gave the keys back to Leftridge, *see* note 5, *supra,* was not false merely because the officer did not hand the keys to Leftridge directly, or because the keys were lost in transit and did not end up in Leftridge's prisoner's property envelope as intended. Nor was the answer materially misleading. The point of the testimony was not that Leftridge received the keys. The point of the testimony—and the only point argued to the jury—was simply that Officer Barnes relinquished control over the keys and did not treat them as incriminating evidence. The prosecutor—who did not know for sure what happened to the keys—had no duty to amplify testimony that was arguably incomplete, but that was not false or materially misleading.

## IV.

Having rejected Leftridge's claims for relief, we affirm his conviction for receiving stolen property.

*So ordered.*